[L. A. No. 18951. In Bank. Oct. 30, 1945.]

Estate of GUY D. STEVENS, Deceased. EDITH LAVENBARG, Appellant, v. ELVA L. SHETRONE, as Administratrix With the Will Annexed, etc., Respondent.

Ivan Miller for Appellant.

Stanley Arndt and Voorhees & Voorhees for Respondent.

SCHAUER, J.—The controversy arose upon a petition by an administratrix for compromise of a claim against her decedent, and involves the construction of sections 750-753 of the Probate Code in their application to a situation which has not heretofore had the attention of this court.

The decedent, Guy D. Stevens, left an estate appraised at approximately $2,700, against which a creditor's claim filed by his divorced wife Vera M. Stevens in the sum of $990, plus interest from November 14, 1941, was allowed. His will, which is holographic, reads as follows:

"Oct. 23 1941

"This is my last will an testament. I own the Residence at 4501 Homer St., Los Angeles, Cal. and I want Edith Lavenberg to have the use of this house 4501 Homer St. for (5) five years, unless she should marry and get security in the meantime. She is to keep up the taxes. At the end of that time she shall have the option to buy the place, for $2000 with monthly payments not more that $20.00 per mo. Then the house is to go to Earl Stevens, 2446 Blanche St., Pasadena, Cal., and Elva Shetrone 2007 Corning St., Los Angeles, Cal., and what cash I have is to be divided between Earl & Elva. It is at the Bank of America in Santa Monica. I have note of $400.00 held on

Art Jones, Malibu, to pay expenses with. I also want my father to have ⅓ of the cash left after expenses (T. G. Stevens)

"Guy D. Stevens"

The administratrix (decedent's daughter, Elva L. Shetrone) filed a petition for interpretation of the will. At the hearing thereon (on April 19, 1943) there were present the administratrix, her brother Earl Stevens, and Edith Lavenbarg (named in the will as Edith Lavenberg). The latter is not a kindred of the decedent. By its order in that proceeding the probate court decreed:

1. That title to the property at 4501 Homer Street, Los Angeles, was vested in Earl Stevens and Elva Shetrone, subject to (a) the administration of this estate, and (b) the right of Edith Lavenbarg to use and occupy the premises and her option to purchase them for $2,000.

2. That the right of Edith Lavenbarg was to use and occupy the house for five years from decedent's death and should cease immediately (a) upon her marriage to a person able to support her according to her current state of life; or (b) upon her failure to pay the taxes on the property promptly as they become due.

3. That the option of Edith Lavenbarg is an option to purchase the property at the end of the five-year period for $2,000 payable in installments of $20 a month without interest, provided that she had not in the meantime married as described above and that she had paid the taxes promptly.

4. That if Edith Lavenbarg should exercise her option, then the sum payable thereunder "shall be payable to Earl Stevens and Elva Shetrone, share and share alike; that their right to receive said money is a present right. . . ."

5. That all funds in the Bank of America in Santa Monica were bequeathed to Earl Stevens and Elva Shetrone, share and share alike.

6. That the Art Jones note of $400 should be used for the payment of administration expenses, etc., and the balance, if any, should go one-third to T. G. Stevens, decedent's father, and two-thirds to the children.

7. That all of the bequests are specific bequests and were so intended by the decedent.

In the present proceeding (the petition to compromise) the court found that the only assets of the deceased at the time of his death and the only assets that came into the hands of the administratrix were:

(a) $1,014.22, in cash, which at the time of the hearing on the petition to compromise was in the Highland Park branch of the Bank of America. The record does not disclose where such money was located on the date of decedent's death.

(b) Personal effects valued at $10.

(c) The right of Edith Lavenbarg to use and occupy the home, valued at $750.

(d) Her right to buy the home, valued at $100.

(e) The home real estate (subject to the rights and option of Edith Lavenbarg) valued at $850.

The note of Art Jones for $400, referred to in the will, had been paid prior to decedent's death but what had become of the proceeds does not appear.

The administratrix reached an agreement with the claimant, Vera M. Stevens, by which the latter agreed to accept in full settlement of her approved claim of $990 and interest the specific bequests made to Edith Lavenbarg, which as shown above had been appraised at $850. Thereupon the administratrix petitioned the probate court for permission to so compromise the claim and to such petition Edith Lavenbarg filed objections. After a hearing the probate court made its order approving the terms of the compromise and disallowing the objections thereto. From that order Edith Lavenbarg has appealed. It is established that such order is appealable (see *Estate of Lucas* (1943), 23 Cal.2d 454, 463 [144 P.2d 340]).

The sole grounds upon which appellant objected to the petition to compromise claim are ''that the bequests or devises to others than . . . [herself], are not entitled to any preference over the specific bequest in favor of . . . [herself], and . . . that all property devised and bequeathed is liable for the debts of the decedent in porportion to the value or amounts of the several devises and legacies.''

At the conclusion of the hearing on the petition to compromise the court found, among other things, that ''All of the property in the estate is specifically covered by the specific legacies and there is no residuary estate which can be used or that is available for the payment of said claim of Vera M. Stevens. Therefore, in order to pay said claim of Vera M. Stevens, it will be necessary that abatement take place in one or more of said legacies. The sole issue herein is an issue of law. The Administratrix and the children of the deceased contend that under Section 752 Probate Code, the legacy to Edith

Lavenberg must first be used and abated before any abatement whatsoever takes place in their legacies inasmuch as she is not related to the deceased and they are kindred of the deceased, while she claims and maintains that all legacies should be abated pro rata."

The pertinent portions of the sections of the Probate Code (750-753) here involved are as follows:

Section 750: "If the testator makes provision by his will, or designates the estate to be appropriated, for the payment of his debts ... they must be paid according to such provision or out of the estate thus appropriated, so far as the same is sufficient. If insufficient, that portion of the estate not disposed of by the will, if any, must be appropriated for that purpose; and if that is not sufficient, the property given to residuary legatees and devisees, and thereafter all other property devised and bequeathed is liable for the same, in proportion to the value or amount of the several devises and legacies, but specific devises and legacies are exempt from such liability if it appears to the court necessary to carry into effect the intention of the testator, and there is other sufficient estate."

Section 751: "The property of a testator, except as otherwise provided in this code, must be resorted to for the payment of legacies in the following order:

"(1) The property which is expressly appropriated by the will therefor.

"(2) Property not disposed of by the will.

"(3) Property which is devised or bequeathed to a residuary legatee."

Section 752: "Unless a different intention is expressed in the will, abatement takes place in any class only as between legacies of that class, and legacies to a spouse or to kindred shall abate only after abatement of legacies to persons not related to the testator."

Section 753: "When property given by will to persons other than the residuary devisees and legatees is sold for the payment of debts ... all the devisees and legatees must contribute according to their respective interests to the devisee or legatee whose devise or legacy has been sold, and the court, *when distribution is made,* must settle the amount of the several liabilities and decree the amount each person shall contribute, and reserve the same from his distributive share for the purpose of such contribution." (Italics added.)

It should be here noted that appellant expressly concedes that the bequests of "what cash I have. . . . It is at the Bank of America in Santa Monica" to decedent's two children were specific bequests and in the same class as the bequests to herself. Appellant further expressly concedes that the order (of April 19, 1943) interpreting the will and decreeing that all of the bequests are specific and were so intended by the decedent was an appealable order, that such order has become final and is not subject to review on this appeal from the compromise order, and that the issues determined thereby are res judicata. Therefore we refrain from expressing an opinion upon these conceded points, deciding this case in reliance upon appellant's concessions but without implying approval of the propositions conceded. We note, further, that no claim is made by appellant that the will discloses an intent to exempt her bequest from the payment of claims until all other property of the estate is exhausted. (See Prob. Code, § 752.)

Appellant's first contention is that at the time of decedent's death his money was in the Highland Park branch of the Bank of America, rather than in the Santa Monica branch (as specified in the will); that therefore the bequest of the money to the two children was adeemed and such money forms a part of decedent's residuary estate; and that consequently, pursuant to the provisions of section 750 of the Probate Code, such money must be appropriated to payment of the creditor's claim before resort is had to appellant's specific bequest. However, as stated above, the court found at the conclusion of the hearing on the petition to compromise that "All of the property in the estate is specifically covered by the specific legacies and there is no residuary estate. . . ." Although evidence was taken at the hearings on both the petition for interpretation of the will and the petition to compromise claim, it was not brought up in the record on appeal. Therefore we must presume that the evidence was sufficient to sustain such finding, that it did not convince the court that the money had been transferred from the Santa Monica branch to the Highland Park branch prior to decedent's death, or that if such transfer had been made decedent intended thereby to destroy the bequest to his children. (See 2 Cal.Jur. 877-878, § 514; *Carpenter* v. *Froloff* (1939), 30 Cal.App.2d 400, 407 [86 P.2d 691]; *Stiles* v. *Bodkin* (1941), 43 Cal.App.2d 839, 840 [111 P.2d 675]; *Lamanet* v. *Lamanet* (1937), 18 Cal. App.2d 402, 405 [63 P.2d 1195]; *Whitney* v. *Redfern* (1940),

41 Cal.App.2d 409, 413 [106 P.2d 919].) ▮ Proof of such intent is necessary to establish an ademption. (See *Estate of McLaughlin* (1929), 97 Cal.App. 485, 488-489 [275 P. 875].)

It may be observed that appellant has also, in a supplemental brief filed by permission after argument before this court on the other issues involved herein, for the first time raised the point that the money to be paid by Edith Lavenbarg should she exercise her option to purchase the home property is not disposed of by the will and therefore must be appropriated to payment of the creditor's claim before resort is had to any of the specific bequests. However, in the order interpreting the will it was declared that title to the home property is vested "in Earl Stevens and Elva Shetrone, subject to . . . the right of Edith Lavenbarg to use and occupy" the premises and her option to purchase them for $2,000 and that should such option be exercised then the sum payable thereunder shall be paid "to Earl Stevens and Elva Shetrone . . .; that their right to receive said money is a present right." As stated above, appellant has conceded that such order interpreting the will has become final and is not now subject to review by this court. Moreover, inasmuch as title to the premises is in the decedent's two surviving children it is apparent that, as decreed by the court, should appellant choose to exercise her option the property may be purchased by her only by paying the purchase price to the owners thereof; i. e., Earl Stevens and Elva Shetrone.

▮ A further answer to each of appellant's two propositions just discussed stems from the fact that the sole grounds upon which appellant objected in the probate court to the petition to compromise claim are "that the bequests or devises to others than . . . [herself], are not entitled to any preference over the specific bequest in favor of . . . [herself], and . . . that all property devised and bequeathed is liable for the debts of the decedent in porportion to the value or amounts of the several devises and legacies." Inasmuch as the record contains neither a transcript nor other statement of the evidence indicating that the case was tried upon any other or broader theory than that presented by such objections appellant must adhere to such theory upon appeal. The findings of the court recite that appellant's claim was that "all legacies should be abated pro rata." ▮ Furthermore, one of the specific findings is that "there is no residuary estate which can be used or that is available for the payment of said claim

of Vera M. Stevens." In the absence of the evidence we cannot question such finding and appellant cannot invoke a proposition which would necessarily imply a fact contrary to that finding.

Appellant's next and most strongly urged assertion is that that portion of section 752 of the Probate Code which provides that "legacies to a spouse or to kindred shall abate only after abatement of legacies to persons not related to the testator" applies only where the legacies have not, as here, been resorted to for the payment of debts but where the estate, even if no debts existed, is insufficent to pay all legacies of the same class, and that such quoted provision is not to be given effect where it has been necessary to resort to any of the legacies in order to pay decedent's debts. In support of this proposition, appellant relies upon certain language from *Estate of Wever* (1936), 12 Cal.App.2d 237 [55 P.2d 279], and also upon the provision of section 753 of the Probate Code that "When property given by will to persons other than the residuary devisees and legatees is sold for the payment of debts . . . all the devisees and legatees must contribute according to their respective interests to the devisee or legatee whose devise or legacy has been sold. . . ." Therefore, argues appellant, where, as here, it is necessary that property specifically bequeathed be appropriated to the payment of debts of the decedent, all the specific devisees and legatees must, according to their respective *monetary* interests, contribute to the devisee or legatee (i. e., appellant) whose devise or legacy has been sold.

It is our view that such contention is not a proper issue in a proceeding for the compromise of a claim against an estate. Section 754 of the Probate Code provides that "When a sale of property of the estate is necessary . . . [to pay debts] the executor or administrator may sell the same, . . . using his discretion as to which property to sell first, except as provided by sections 750 and 751 of this code." Inasmuch as, under the facts and circumstances here before us, sections 750 and 751 (hereinabove quoted) do not appear to forbid the appropriation to the payment of decedent's debts of the bequest to appellant, it would seem to be within the discretion of the administratrix to select such bequest for that purpose. And if it appears to her and to the probate court to be more advantageous to the estate to employ the bequest directly to the effecting of compromise of a creditor's claim, rather than to

sell the bequest outright and appropriate the proceeds of the sale to cash payment of the claim, such procedure will not be prejudicial to whatever rights of contribution from other devisees and legatees appellant may otherwise have. If a right of contribution is eventually established, the total of the assets remaining in the estate from which contribution would be made should presumably be greater than if a compromise had not been effected, and thus the appellant's ultimate distributive share of the estate will be greater. And if *at the time of distribution* it is determined that appellant is entitled to no contribution from the other devisees and legatees, then obviously the appropriation of her bequest to the payment of a creditor's claim will not legally have prejudiced her.

 It is to be noted that section 753 of the Probate Code, in addition to its provision, relied upon by appellant, that "all the devisees and legatees must contribute according to their respective interests to the devisee or legatee whose devise or legacy has been sold" for the payment of debts, further specifies that "the court, *when distribution is made,* must settle the amount of the several liabilities and decree the amount each person shall contribute, and reserve the same from his distributive share for the purpose of such contribution." (Italics added.) Thus, appellant may, when proceedings for distribution of the estate are before the probate court, properly urge her demands for contribution from the other devisees and legatees. However, even though a final determination of such claims prior to that time is premature. (see *Estate of Thayer* (1904), 142 Cal. 453, 456 [76 P. 41]), we feel that it is appropriate to express at this time, for the guidance of the probate court when a petition for distribution of the estate is before it, our views concerning the law applicable to appellant's asserted right of contribution.

 Preliminarily it may be observed that although section 753 of the Probate Code specifies that "all the devisees and legatees must contribute according to their respective interests to the devisee or legatee whose devise or legacy *has been sold*" (italics added) for the payment of debts, it would appear that the same right of contribution should and does exist if a particular devise or legacy has been appropriated in its tangible form and without first being converted into cash to the payment (by means, as in this case, of a compromise settlement with the creditor) of a debt of the estate. There is no substantial difference, material here, except perhaps in ad-

vantages accruing to the estate, between the sale of an asset of the estate for the purpose of securing cash with which to pay a debt and the transfer of such asset outright to the creditor, by means of a compromise approved by the probate court, in full satisfaction of such debt. In either event the debt is paid, the specific property constituting the devise or legacy is lost as such to the devisee or legatee, and the latter's right, if any, to receive contribution under the terms of section 753 when distribution is made, then arises.

However, we are of the opinion that the provision of section 753 that "all the devisees and legatees must contribute according to *their respective interests* to the devisee or legatee whose devise or legacy" (italics added) has been appropriated to the payment of debts contemplates interest as measured by the class of the various devises and legacies (i. e., whether general or specific, etc.; see *Estate of De Santi* (1942), 53 Cal.App.2d 716, 719-721 [128 P.2d 434]) and by kinship to the decedent as well as by the monetary value of the various devises or legacies, and that in a case in which no property has been expressly appropriated by the will for the payment of debts and no property exists which is not disposed of by the will, and in order to pay debts of the estate it has become necessary to resort to one or more of the legacies (see Prob. Code, § 750), with resultant abatement of at least a portion of one or more of such legacies, it must be held that, as specified by section 752 of the Probate Code, "legacies to a spouse or to kindred shall abate only after abatement of legacies to persons not related to the testator."

Sections 750 through 753 of the Probate Code, here under consideration, relate to the same subject matter, are therefore *in pari materia,* and "must be read and construed together, as one act, each referring to and supplementing the other . . . [and] if there is an apparent conflict between such statutes, they should be compared and harmonized, if possible, to ascertain the legislative intent and to give force and effect to both or all of them so far as possible. . . ." (See 23 Cal.Jur. 785-788, §§ 163, 166.) It is also a familiar rule that when "code provisions appear to conflict, they should . . . be given such a construction as will give effect to all of them, if possible." (See Code Civ. Proc., § 1858; 23 Cal.Jur. 792, § 170.) Here, although the provision of section 752 that "Unless a different intention is expressed in the will . . . legacies to a spouse or to kindred shall abate only after

abatement of legacies to persons not related to the testator"
appears at first impression to conflict with the direction of
section 753 that "*all* [italics added] the devisees and legatees
must contribute according to their respective interests to the
devisee or legatee whose devise or legacy has been" appropri-
ated to the payment of the decedent's debts, such seeming
conflict dissolves in the light of the construction suggested
hereinabove. By such construction the provisions of each
section are given full force and effect and the apparent in-
tent of the Legislature (as expressed in § 752) to give pref-
erence to spouse and kindred in the payment of legacies, un-
less a different intention is expressed in the will, is carried out.

Having stated the rule we immediately emphasize
that the legislative preference is to be given effect only where
a different intention is not apparent in the will. It is
preeminently the duty of the court in construing the will to
seek to ascertain the intention of the testator. Insofar as his
intention is expressed it must be given effect. (Prob. Code,
§ 101; *Estate of Axcelrod* (1944), 23 Cal.2d 761, 766 [147
P.2d 1]; *Estate of Heard* (1944), 25 Cal.2d 322, 326 [153
P.2d 553].) Whether the testator here intended to and
did, by the language used in the will, reasonably evidence an
intent which would preclude application of the legislative
preference must be determined by the probate court at the
time distribution is ordered.

We note that the trial court in its conclusions of law un-
dertook to declare that "The legacies to Earl Stevens and
Elva Shetrone . . . should be abated only after abatement of
the legacies to persons not related to the deceased" and that
"The legacies to Edith Lavenberg . . . should be abated be-
fore the legacies to the kindred." These declarations, as shown
above, purport to determine an issue which was not properly
before the court in the hearing on the objections to the peti-
tion to compromise claim. They are, however, unnecessary to,
do not support, and are not carried into the decree appealed
from. They may, therefore, be disregarded.

To summarize, it is our view that ultimate determina-
tion of the right of contribution must await the petition for
distribution; that it is the paramount duty of the court to
ascertain and give effect to the intention of the testator as
expressed in the will; and that where no different intention
is expressed in the will, "when property given by will to per-
sons other than the residuary devisee and legatee is sold for

the payment of debts" contribution is to be enforced from the spouse and kindred of the testator only after the property appropriated for the other devises or legacies in the same class as those of such spouse or kindred has been exhausted.

As already mentioned, appellant relies upon certain language appearing in *Estate of Wever* (1936), *supra*, 12 Cal. App.2d 237, 238-243. We find nothing in that opinion which is inconsistent with our views as hereinabove expressed. Moreover the court in that case expressly pointed out (at page 243) that there was not presented to it nor was it passing upon the issue as to "whether spouse and kindred should contribute proportionately to . . . [the payment of debts] as under section 753 [of the Probate Code]" and that such questions "must be determined only when the issues are properly raised for decision."

No other attacks are made by appellant upon the order appealed from. For the reasons stated above such order is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

EDMONDS, J.—I concur in the judgment but do not join in the determination that it is now appropriate to advise the probate court concerning the law applicable to appellant's asserted right of contribution.