[No. 22547.   Department Two.   November 3, 1930.]

ROY INVESTMENT COMPANY, *Plaintiff*, v. J. LISTER HOLMES *et al., Respondents*, CHRIS IVERSEN *et al., Appellants*.[1]

[1]Reported in 292 Pac. 403.

*H. A. P. Myers,* for appellants.
*Hyland, Elvidge & Alvord,* for respondents.

HOLCOMB, J.—This action was originally begun by Roy Investment Co., a corporation, on an assigned claim for $3,082 from appellants to it, against respondents in this action. Appellants were brought in as additional defendants, and the assigned claim was reassigned to appellants, and upon the cross-complaint of respondents Holmes, the answer and cross-complaint of appellants and the reply thereto, the cause was tried in the lower court without a jury.

The litigation grew out of the construction of a house by appellants in the Broadmoor Addition to Seattle, there being no contract in writing entered into between the parties. Appellant Chris Iversen and his son, Harold E. Iversen, are partners, and are experienced builders, and appellant Ethel Iversen is the wife of Harold E. Iversen. Respondent J. Lister Holmes is an experienced architect, and Jane L. Holmes is his wife. Appellant Chris Iversen is the superintendent of construction in all building operations carried on by appellants, and his son is the financial manager of the partnership. The cause of action stated by respondents against appellants is as follows:

"That heretofore the plaintiff was the owner of the following described real property situated in King county, state of Washington, to wit:

"Tract 200 of Broadmoor, King county, Washington, which property the additional defendants verbally agreed to purchase from the above named defendants upon the following terms:

"Total purchase price $14,900 payable as follows: By the assumption of a mortgage of $10,000 to White & Bollard, Inc., and a second mortgage of $2,437.50 to the Puget Mill Co., and the remainder of the purchase price, to wit, the sum of $2,462.50 to be payable, with interest at the rate of 6% per annum, at the rate of

$150 per month on the 15th day of each and every month, beginning June 15, 1928.

"That thereafter the above named additional defendants went into the possession of the above described property and erected a building thereon and incurred a large amount of indebtedness, and the above named defendants heretofore advanced to the additional defendants the sum of $1,500 to enable the said additional defendants to complete the said building."

The prayer of the cross-complaint is to quiet respondents' title in and to the property above described as against any claim of appellants, and for a judgment in the sum of $1,500 alleged as a loan made to appellants.

The cause of action of appellants is, in substance, that they constructed the house for respondents at their request at a cost of $17,164.35, of which only $11,000 has been paid, and prayed for judgment for the balance due of $6,164.35. After receiving all of the evidence, the trial court made findings, in substance, sustaining the above quoted allegations of respondents' cross-complaint.

It further found that appellants incurred indebtedness in the construction of the house on the property approximating $17,355; that this indebtedness was incurred by appellants for and on their own behalf upon their own credit, and the consideration for it was not ordered by respondents nor for nor on their behalf nor on their credit, and that respondents at no time promised or agreed to pay appellants or assume that indebtedness nor any portion thereof; that, in addition to obtaining the first and second mortgages, as alleged and found by the court, respondents in April, 1928, advanced to appellants $2,000 in cash, and on May 5, 1928, advanced and loaned to appellants $1,500 in cash; that appellants, on May 10, 1928, repaid the sum of

$2,000 due respondents, but the $1,500 remains unpaid and owing by appellants to respondents.

The court also found that, during the summer of 1928, the house was constructed and finished by appellants, but that appellants failed to enter into any written agreement for the purchase of the property, and failed to make any of the payments to be made thereon under and by virtue of the oral agreement, and that respondents, in order to protect their interest in the property and to prevent the foreclosure of the mortgage, and with the consent of appellants, rented the property for $100 per month, and have since collected the rent and applied the same against the mortgage indebtedness, taxes and local improvement assessments. It was further found that respondents were not indebted to appellants in any sum, but that appellants and each of them are indebted to respondents in the sum of $1,500 with interest at six per cent per annum from May 5, 1928.

A short time afterwards, the trial court made a supplemental finding giving appellants ninety days within which to enter into a written contract for the purchase of the property on the terms found to have been orally made, which appellants disregarded. After the lapse of the ninety days, judgment was entered against appellants for the $1,500 and interest, and quieting the title in respondent against any claims appellants might thereafter make.

On this appeal, appellants vigorously contend that the evidence in the case preponderates against the findings made by the court, and, reminding us that this is a trial *de novo* under Rem. Comp. Stat., § 1736, urge us to reverse several findings. It is stoutly contended that the evidence in support of the finding that an oral contract of sale was made does not constitute clear,

unequivocal and convincing proof thereof, and that the finding is unjustifiable.

The house was built on a lot which was under purchase contract by respondents. It was designed by Holmes as an architectural adviser for the West Coast Lumber Association as a model house and as an advertising scheme of that concern and a Seattle newspaper. Holmes received a fee for his design and services in construction as architect from the above association.

The evidence of both parties to this litigation has been carefully read and studied. It is in sharp conflict. It is peculiarly a case where the trial judge was in better position to weigh the evidence than are we by the cold record. There is positive and emphatic evidence on the part of appellants that no such oral contract of sale was made. They also testified that they were merely building contractors and not promoters of advertising schemes or exploiters of real estate, and had no interest in taking such a contract upon themselves as respondents contend. On the other hand, respondent testified just as positively and emphatically, and was supported by a reputable attorney of Seattle, Mr. Taylor, that the oral contract was made, and that it was agreed that a written contract should be entered into, but that, after several months were consumed in perfecting respondents' title, the house was then almost completed and respondents then relied wholly upon the integrity and financial responsibility of appellants.

Although appellants forcefully argue that the purported parol sale is improbable and unreasonable, we can see no more improbability or unreasonableness in the theory of the one side than the other. The trial judge, having the witnesses before him and being able to judge of their demeanor and credibility, rejected

the evidence of appellants and accepted that of respondents. If the evidence of respondents was convincing to the trial judge and that of appellants was not, there was plain, unequivocal and convincing proof of the parol contract of sale. That is all that is required even under the authorities cited by appellants. See *O'Connor v. Jackson,* 23 Wash. 224, 62 Pac. 761. We are therefore unable to reverse the findings of the trial court on the facts.

Appellants also contend that, if the alleged parol sale was made, it was void under our statute of frauds and therefore cannot be enforced.

Of course the parol contract requires part performance to avoid the statute of frauds. *Anderson v. Schneider,* 22 Wash. 363, 60 Pac. 1125; *Broadway Hospital & Sanitarium v. Decker,* 47 Wash. 586, 92 Pac. 445.

According to the findings of the trial court, based upon competent testimony, there was full performance, so far as respondents were concerned, of their part of the oral contract. There was, also, full performance on the part of appellants so far as the construction of the house was concerned, which was a part of the contract, and from the time that appellants entered into possession of the real estate for the purpose of constructing the house, according to the findings, they retained possession of the premises. After the house was constructed, they provided finishings and furnishings for it and for the lawn and garden. They also gave evidence of their ownership and possession of the premises, after the construction of the house, by listing the premises for sale in real estate offices as the owners. In one instance they made a written listing of the premises for sale, signed by one of appellants, specifying appellants as owners. It is manifest that such evidence of ownership and possession is sufficient

to take the oral contract out of the statute of frauds, under the cases cited by appellants.

Notwithstanding that we do not see our way clear to set aside the findings and conclusions of the trial court, as above stated, nevertheless there are strong equities in favor of appellants which appeal to us. The judgment seems harsh and inequitable. This being a case which we are trying *de novo* and have power to affirm, reverse or modify and direct the proper judgment to be entered (Rem. Comp. Stat., § 1737), we deem it only just to weigh the equities and give appellants some relief.

Respondent, the husband, himself testified that the original estimate made by him as to the cost of the house was $13,000. He also expected to get a first mortgage loan of $12,000 for use in the construction, but ultimately was able to get only $10,000, $500 of which was paid for fees and expenses incidental to procuring the loan and $9,500 only was available for construction by appellants. He also testified that he was to get his money when the property was sold. He further testified that in his opinion the value of the real estate, as improved by the house constructed, is $21,000. It will be noted that, including the loan of $1,500 made by respondent and the $6,134.35, which did not comprise about $190 on other construction items paid by appellants, appellants will be out $8,100 (without interest) and without any fault of theirs. It is apparent also that they are involved to the aggregate amount of about $19,000. They rejected an offer of purchase for $18,000, which they were justified in doing, as a good business measure.

If the title be immediately and absolutely quieted in respondent, he will be the gainer by over $8,100 from appellants' labors and money, where it never was con-

templated by the contract he himself proved. He will reap where he never sowed.

We think the conditions and circumstances are such that appellants should be given a reasonable time within which, if possible, to procure a sale of the real estate involved and recoup their expenditures at least so far as possible. Under the existing financial depression, we consider that six months would not be too long for him to do that, and that possibly it may take less time.

The judgment or decree of the trial court will be modified so as to hold the decree quieting respondents' title in abeyance for six months, unless appellants shall sooner have obtained a satisfactory purchaser so as to recoup their losses on the property so far as possible, or so far as to them may be acceptable, after the filing of the remittitur in this case.

No sale shall be made on any terms which shall lessen or imperil the securities of the two prior mortgages against the premises.

Having recovered a more favorable judgment, appellants will recover costs of appeal.

The cause is remanded for further proceedings in accordance with this opinion.

MITCHELL, C. J., FULLERTON, and MAIN, JJ., concur.