[No. 22594. Department One. November 3, 1930.]

*In the Matter of the Estate of* ANNA N. HALL, *Deceased.*

GEORGE H. HALL, *Appellant,* v. E. H. STOKES, *as Executor, et al., Respondents.*[1]

*William A. Gilmore* and *Leo W. Stewart,* for appellant.

*James W. Anderson,* for respondents Hansen *et al.*

*Hyland, Elvidge & Alvord* and *Agnes N. Richmond,* for respondent Stokes.

*Todd, Holman & Sprague,* for respondent Orthopedic Hospital.

*Wingate & Benz,* for respondent Salvation Army.

[1]Reported in 292 Pac. 401.

TOLMAN, J.—This is a proceeding to contest a will. A demurrer was sustained to the amended petition, followed by a judgment of dismissal, and the contestant has appealed.

The amended petition discloses that appellant is the surviving husband of Anna N. Hall, who died testate on June 30, 1929, leaving an estate in King county, Washington, all of which was her separate property acquired before her marriage to the appellant. Prior to the marriage, and on October 18, 1927, the deceased, being then an unmarried woman, under her then name of Anna N. Nicholson, duly made and published the will in question, which, among other things, provides:

"It is my will and I hereby direct that in the event that I should remarry that said remarriage shall in no wise alter or affect the disposition of my property but that the property which is my own, that is to say, my separate property shall be distributed in the manner hereinbefore set forth and that my husband shall take nothing of my separate property. But in the event that I shall remarry and that my husband survive me, then and in that event, I hereby give, devise and bequeath unto my surviving spouse all of my interest in the community property, real, personal or mixed, of whatsoever nature and kind and wheresoever the same may be which I may have any interest in at the time of my death, to be his sole and separate property in fee simple."

The deceased intermarried with the appellant on November 27, 1927, and they remained husband and wife until her death.

The reasons advanced for setting aside the will are pleaded as follows:

"Your petitioner excepts and objects to the said decree admitting said will to probate and objects and excepts to the said alleged will so admitted to probate as the last will and testament of said Anna N. Hall, deceased, upon the following grounds and for the fol-

lowing reasons: That said alleged and purported will of the deceased was not and is not entitled to be admitted to probate under the laws of the state of Washington for the reason and because the same was executed by the deceased while she was a single and unmarried woman on the 18th day of October, 1927, for the reason that said will was revoked by reason of the subsequent marriage of your petitioner to the said Anna N. Nicholson on the 27th day of November, 1927, because the said purported will did not name your petitioner as a legatee and did not contain any provision for your petitioner by marriage settlement and did not provide for your petitioner in any way and did not mention your petitioner by his name, George H. Hall or otherwise in such a way as to show an intention not to make such provision for him, and because under the terms of said purported will, your petitioner, George H. Hall as surviving spouse of the deceased did not inherit any property under the terms of said will because there was no community property of any kind or character, either real or personal acquired or belonging to the deceased and your petitioner at the time of the death of the deceased, Anna N. Hall.''

The question here presented depends for its solution upon the construction to be placed upon our statute, Rem. Comp. Stat., § 1399, which reads:

''If, after making any will, the testator shall marry and the wife, or husband, shall be living at the time of the death of the testator, such will shall be deemed revoked, unless provision shall have been made for such survivor by marriage settlement, or unless such survivor be provided for in the will or in such way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of revocation shall be received. A divorce, subsequent to the making of a will, shall revoke the will as to the divorced spouse.''

Under this statute the will must be held to have been revoked by the subsequent marriage unless some one or more of the three following situations is presented:

(1) That the surviving spouse was provided for by a marriage settlement; or (2) unless such survivor was provided for in the will, or (3) mentioned therein in such a way as to show an intention not to make provision for him.

There is nothing in the pleading attacked which suggests a marriage settlement, and therefore the first situation supposed is not here presented.

Did the will provide for appellant or mention him in such a way to show an intent not to provide for him? Nothing is pleaded to indicate that, at the time the deceased executed her will, she knew the appellant or then contemplated marriage with him. While the time intervening between the making of the will and the marriage was short, being but little more than a month, yet it is a matter of common knowledge that hasty marriages are sometimes entered into, and neither the language of the will nor the facts pleaded will authorize the assumption that the testatrix, when she executed the will, then contemplated the marriage which afterwards took place.

Many of our previous will cases are cited as having some bearing, but among them we find only the following which seem to be upon the question at issue.

*In re Petridge's Will,* 47 Wash. 77, 91 Pac. 634, involves a will made prior to marriage by a woman who afterwards married and died, leaving a surviving husband. Very clearly in that case there was no marriage settlement and no provision in the will of any sort for the surviving spouse, and the case is in point here only as it holds that the words of the statute, which refer only to a testator, must be held to include the female as well as the male and be applied to a testatrix as well as to a testator.

*In re Adler's Estate,* 52 Wash. 539, 100 Pac. 1019, is concerned with a will made by an unmarried man leav-

ing a bequest to a woman specifically named, who afterwards married the testator but a few hours before his death. The court held that the will was not revoked by the subsequent marriage, revocation by implication not being favored, because the surviving wife was, in fact, provided for in the will. Among other things, the court there said:

"It will be seen by those who are inclined to follow the cases that our statute is a wide departure from the common law as well as from the theories usually advanced to sustain that rule, and that it differs from the statutes of any other state, at least in so far as they have been construed by the courts. . . .

"When the legislature has assumed to speak upon a given subject, courts must take its expression as it is, and if it be certain in its terms, there is no reason for speculation as to its reasons, nor warrant for adding anything to meet a given case. The provisions of Bal. Code, § 4598 (P. C. § 2344), are in the disjunctive. If a person shall have made a marriage settlement, or if the wife shall have been provided for, or if an intent not to make such provision is disclosed, the will is deemed revoked. It does not say that the provision must be made in contemplation of marriage. The only question open is whether the person who has become a proper object of the bounty of the testator is provided for. Nor will we take any concern of the amount of the provision. To bring ourselves within one of the several rules to which we have referred, we have no right to read into our statute the words 'unless it clearly appears,' or 'was made in contemplation of marriage.'

"It is conceded that parol evidence is incompetent to explain the will. This furnishes further reason to sustain our views. Taking the statute as it is, may we not say, presuming that the testator did not, at the time of executing the will, have in mind the changed condition to be wrought by a subsequent marriage, that, upon the happening of that event, being mindful of his will, he was satisfied with the provision he had made for respondent? Under the common law, and

statutes in form different from our own, the law presumes a testator would have made another will; but under our statute the presumption should not follow, for the person in whose behalf the law was written is provided for, and the end of the law is fully accomplished. There is nothing in the will to show a counter intent. To hold otherwise it seems to us would be in effect to say that we should overturn this will because the legatee was not as fully provided for as in our judgment a wife should be, or has not received as much as she would have received under the statutes of descent. If we could do that, we might, in the interest of heirs in a given case, overturn the will because the person provided for had more than enough to meet the presumed duty of the testator.''

*In re Ziegner's Estate,* 146 Wash. 537, 264 Pac. 12, and the cases therein cited upon which its decision is rested, is valuable here only in that it announces the doctrine that wills are ambulatory in their nature, taking effect only upon the death of the testator and speaking only as of that time. This doctrine, as we shall later see, has an important bearing upon the present question.

California has a statute which seems to be identical with our own, and under it the supreme court of California has gone far further than is necessary here to hold a will not to be revoked by a subsequent marriage. We do not necessarily approve the ruling on the facts upon which it is based, but the logic of its reasoning, as applied to the facts in this case, seems to be irresistible. There, the testator made a will leaving all of his property to his father, and inserted a provision expressly disinheriting each and every person who might be, or claim to be, an heir-at-law except as otherwise provided in the will. The will made no mention of a contemplated marriage or of a possible surviving spouse. The very day after the will was made, the testator married the wife who survived him. The

California court, speaking of this peculiar provision, said:

"This clause does not mention his wife. It is obvious, however, that she is included by the phrase, 'any person whomsoever who if I died intestate would be entitled to any part of my estate.' In fact, so far as appears, she and the unborn child were the only persons who are included therein. Respondent contends that because when the will was made the day before, she was not the wife of the testator, there could not have been any intention to make provision for her as his wife. No reason is perceived why the wife could not be 'mentioned' by any description that would include her. Certainly it would not be necessary to mention her by name and to include her, as she was included, in the description of a class, 'mentions' her as effectually as if she had been named therein. He must have contemplated that such person might establish her claim to a share of the estate, for he provides that in such event all of the share shall go to his father except one dollar. It is therefore to be supposed that his wife would be included. The fact that she was not his wife when he made the will is of no significance. He was speaking of a future event, the descent that would be cast upon his death, and he could provide for the persons who might be then interested, though not so at the time by the statement that they should have only a part of that which they would otherwise take." *In re Kurtz's Estate,* 190 Cal. 146, 210 Pac. 959.

The California court in the recent case of *In re Appenfelder's Estate,* 99 Cal. App. 330, 278 Pac. 473, involving the same question as the *Adler* case, *supra,* quoted *in extenso* from the ruling of this court in that case and followed its ruling.

The practical application of these several authorities to the facts in the case at bar impels the holding that, since revocation by implication is not favored, and since wills are ambulatory and speak only as of the date of the death of the testator, we have here a will

which says, as of the day of the death of the testatrix, that her surviving husband shall take nothing of her separate estate, but only her interest in the community property, if any. The words "my husband" spoken at that time are as specific as though the name "George H. Hall" had been used, and show a conclusive intent not to provide for him out of the separate estate, and to provide for him only in the event that there should be community estate. The words "my husband" spoken in the future tense are as specific as words commonly used to describe after-born children, and it is a common practice to make provision in wills for any after-born child, which practice we seem to have upheld in *Gehlen v. Gehlen,* 77 Wash. 17, 137 Pac. 312.

We conclude that the will was not revoked by the marriage, because the surviving husband was "provided for in the will or in such way mentioned therein as to show an intention not to make such provision," and that the demurrer was properly sustained.

The judgment appealed from is therefore affirmed.

MITCHELL, C. J., HOLCOMB, PARKER, and MAIN, JJ., concur.