[Civ. No. 18109. Second Dist., Div. Three. Jan. 15, 1951.]

Estate of HELEN E. TURNEY, Deceased. GEORGE L. TURNEY et al., Respondents, v. HELEN MANZER et al., Appellants.

George C. Bliss and Daniel Schnabel for Appellants.

Kenneth D. Holland for Respondents.

VALLÉE, J.—Appeal from a judgment of the probate court adjudging that a will, made by an unmarried woman, was revoked as to her surviving spouse by her subsequent marriage.

On March 20, 1946, Helen E. Schinauer, being then unmarried, made her will. On April 12, 1947, she married George L. Turney. She died on April 7, 1949, leaving her husband surviving.

The will bequeathed certain personal property to her daughter; $1,000 to a stepchild; devised and bequeathed the residue of her estate to her daughter and her stepchildren; and contained these provisions:

"SIXTH: I have, except as otherwise in this Will specified, intentionally and with full knowledge omitted to provide for my heirs living at the time of my demise.

"SEVENTH: If any devisee, legatee or beneficiary under this Will, or any person claiming under or through any devisee, legatee or beneficiary, or any other person who, if I died wholly or partly intestate, would be entitled to share in my estate, shall in any manner whatsoever, directly or indirectly, contest this will or attack, oppose or in any manner seek to impair or invalidate any provision hereof, then, in each of the above-mentioned cases, I hereby bequeath to such person or persons the sum of One Dollar ($1.00) only, and all other bequests, devises and interests in this will given to such person or persons shall be forfeited."

The will was admitted to probate. Thereafter the surviving husband petitioned for revocation of probate as to him. Evidence was received, without objection, that decedent was 48 or 49 years old at the time the will was made; she had been married twice at that time, was then unmarried; she first met respondent (the surviving spouse) in July or August, 1946 (four or five months after the will was made); and

that no provision had been made for respondent by marriage contract. The probate court held that the will was revoked as to the surviving husband by reason of the marriage of the testatrix subsequent to the making of the will. The daughter and stepchildren appeal.

Probate Code, section 70, reads: "If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received."

The question is: Is the surviving spouse "provided for in the will, or in such way mentioned therein as to show an intention not to make such provision?"

Appellants claim that respondent was "provided for" and "mentioned" in the will. They rely on *Estate of Kurtz,* 190 Cal. 146 [210 P. 959]. Respondent claims that he was neither "provided for" nor "mentioned" in the will and that the Kurtz case was "overruled and laid to rest" by *Estate of Axcelrod,* 23 Cal.2d 761 [147 P.2d 1].

It has long been the policy of the law that upon marriage an antecedent will shall be revoked. (*Estate of Axcelrod, supra,* 23 Cal.2d 761, 767; 1 Page on Wills, Lifetime ed., 929, § 507; 5 Wis.L.Rev. 387.) In England, since the Wills Act of 1837, every will made by a man or woman is revoked by his or her marriage, except a will made under certain circumstances in exercise of a power. (Stats. at Large, 1 *Vict.* ch. 26, § 18.) The rule appears to be different since 1925 as to wills expressly made in contemplation of marriage. (See *Pilot* v. *Gainfort* (1931), Prob.Div. (Eng.) 103.) In many states the rule is that every will made by a man or woman is revoked by his or her marriage. (68 C.J. 831, § 536; anno. 92 A.L.R. 1010, 1013.) A number of jurisdictions have held that a subsequent marriage revokes an antecedent will notwithstanding an antenuptial agreement. (*Ibid.*) "The law presumes that the subsequent marriage of a testator has wrought such a change in his condition in life as to cause him to destroy or cancel a previous will . . ." (*Sanders* v. *Simcich,* 65 Cal. 50, 52 [2 P. 741].) A party seeking to rebut the statutory presumption of revocation must bring himself within the literal terms of one of the exceptions. (See *Corker* v. *Corker,* 87 Cal. 643 [25 P. 922]; *Estate of Smith,*

15 Cal.App.2d 548 [59 P.2d 854].) To prevent a subsequent marriage from working a revocation of the will, the mention must show "an intention not to make . . . provision" for the surviving spouse. (*Estate of Ryan*, 191 Cal. 307, 310-312 [216 P. 366].)

In *Estate of Kurtz*, 190 Cal. 146 [210 P. 959], the widow of the testator contested the admission of the will to probate on the ground that since it contained neither "provision for" nor "mention of" her or their unborn child, it had been revoked by the operation of then sections 1298 and 1299 of the Civil Code. The will was made June 3, 1921. The next day the testator married the spouse who survived him. The will contained this provision:

"Fourth: I hereby generally and expressly disinherit each and all persons whatsoever claiming to be, and who may be, my heirs at law, except as such may be determined by this will, and if any of such parties or such heirs, or any person whomsoever who, if I died intestate, would be entitled to any part of my estate, shall either directly, singly, or in conjunction with other persons, seek or establish or assert any claim to my estate, or any part thereof, excepting under this will, or attack or oppose or seek to set aside the probate of this will, or impair, invalidate or set aside the provisions, or endeavor to secure or procure any part of my estate other than through or under this will; then in any or all of the above-mentioned cases and events, I hereby give and bequeath to said person or persons the sum of One ($1.00) Dollar and no more in lieu of any other share or interest in my estate, and all the rest of the interest, share or property which would otherwise have gone to such person or persons by devise or inheritance, or which they might be entitled to take under any provision of law shall go . . . to my said father. . . ."

As will more fully hereinafter appear, the court held that the surviving spouse was provided for in the will because of (1) the phrase "any person whomsoever who, if I died intestate, would be entitled to any part of my estate"; and (2) the further phrase referring to any interest in the estate "which they might be entitled to take under any provision of law"; and (3) evidence that at the time the will was made the surviving spouse was engaged to marry the testator and that they were married the next day.

It is not necessary to determine whether *Estate of Kurtz*, *supra*, 190 Cal. 146, was "overruled and laid to rest" by

*Estate of Axelrod,* 23 Cal.2d 761 [147 P.2d 1]. *Estate of Rozen-Goldenberg,* 1 Cal.App.2d 631 [37 P.2d 132], which is on all fours with the case at bar, was expressly approved by the Supreme Court in the Axelrod case. The opinion in the Rozen-Goldenberg case does not set forth the provisions of the will under consideration. Examination of the record reveals that the will provided:

"FIFTH: I have, except as otherwise in this Will specified, intentionally and with full knowledge omitted to provide for my heirs living at the time of my demise.

"SIXTH: If any devisee or legatee under this Will, or any person claiming under or through any devisee or legatee, or any other person who, if I died wholly or partially intestate, would be entitled to share in my estate, shall, in any manner whatsoever, directly or indirectly, contest this Will, or attack, oppose, or in any manner seek to impair or invalidate any provision hereof, or shall, in any manner whatsoever, conspire or cooperate with any person or persons attempting to do any of the acts or things aforesaid, or shall endeavor to succeed to any part of my estate otherwise than through this Will, then in each of the above mentioned cases, I hereby bequeath to such person or persons, the sum of One ($1.00) Dollar only, and all other bequests, devises and interests in this Will given to such person or persons shall be forfeited and shall be distributed pro-rata among such of my devisees and legatees as shall not in any manner have participated in such acts or proceedings. If all my devisees and legatees shall participate in such proceedings, I give, devise and bequeath the whole of my estate to my heirs-at-law, according to the laws of succession of the State of California, then in force, excluding all contestants and said devisees, legatees and their successors in interest."

It will be noted that the material parts of these provisions of the Rozen-Goldenberg will are identical with the same provisions of the will in the case at bar. The court there held, page 633: "It would appear that the intention to make no provision for the future surviving spouse would have to be set out with greater certainty and explicitness than in the instant case if the revocation provided by section 70 of the Probate Code is to be averted, where, as here, there is no marriage contract and no provision for such survivor in the will.

"The case is to be distinguished from *Estate of Kurtz,* 190 Cal. 146 [210 P. 959]. In that case deceased married the

day after he made his will. The court sustained the will but held that the ruling of the trial court excluding evidence to the effect that testator was engaged to marry contestant at the time he executed the will, was error, and that it should have been admitted 'for the purpose of showing *who the maker of the will intended to include,* by the phrase "any person whomsoever, who, if I died intestate, would be entitled to any part of my estate," a phrase which, if he had not been engaged to marry the contestant, would be somewhat ambiguous, but which would be made certain by showing the fact of such engagement.' (Italics ours.)

"The cited case is not authority in the instant case for the reason that a person, unknown to testatrix at the time of the execution of the will and subsequently married to her, could not have been included among those whom testatrix intended to refer to in her will."

In *Estate of Axcelrod, supra,* 23 Cal.2d 761, the will was made December 9, 1935. On April 17, 1936, the testatrix married the spouse who survived her. No evidence was offered to or received by the trial court. Paragraph "*Sixth*" of the will read:

"I have intentionally omitted all of my heirs who are not specifically mentioned herein, intending thereby to disinherit them, and if any such persons, or heirs, or any devisees or legatees under this Will . . . shall . . . seek to establish or assert any claims to my estate or any part thereof, excepting under this Will, or attack [etc.] . . . , then . . . I hereby give and bequeath to such person or persons the sum of ONE ($1.00) DOLLAR and no more, in lieu of any other share or interest in my said estate. . . ."

The respondents there relied, as do appellants here, on *Estate of Kurtz, supra,* 190 Cal. 146. The Supreme Court said, page 765: "But in that case there was different testamentary language to be construed, *and an extrinsic factual basis upon which to interpret it was held admissible in evidence.* [Italics added.] . . .

"The facts here involved, insofar as they are disclosed by the record, appear to be more similar to those which were before the District Court of Appeal in *Estate of Rozen-Goldenberg* (1934), 1 Cal.App.2d 631 [37 P.2d 132], than to those which were the basis of the decision in *Estate of Kurtz* (1922), *supra,* 190 Cal. 146. We adopt here the language used by Judge Scott in speaking for his court in the Rozen-Goldenberg

case (p. 633 of 1 Cal.App.2d) : 'It would appear that the intention [if any] to make no provision for the future surviving spouse would have to be set out with greater certainty and explicitness than in the instant case if the revocation provided by section 70 of the Probate Code is to be averted, where, as here, there is no marriage contract and no provision for such survivor in the will.' "

In the Kurtz case, as we have said and as was emphasized in the Axcelrod case, the court considered evidence that at the time the will was made the testator was engaged to be married to the surviving spouse. The evidence was offered to show whom he intended to include by the clause in question. The court held this evidence admissible on the ground that the description of the class in the will was so ambiguous as to justify the reception of extrinsic evidence to explain it. The court also considered the fact that the testator married the surviving spouse the next day after making the will. Implicit in the opinion is the view that the after-acquired spouse was not to be considered as "provided for" or "mentioned" within the meaning of the statute, unless the words of the will, aided by the extrinsic evidence, showed the intention of the testator to include her as a member of the class referred to. Upon the facts, it was reasonable to conclude that the testator made the will in contemplation of his subsequent marriage. While it appeared probable in the Kurtz case that the testator intended the general clause in his will as a provision for his future wife, such a conclusion cannot reasonably be drawn in the present case.

The intention of the maker of a will is to be determined only as of the date of the making of the will. The testatrix in the instant case was not even acquainted with respondent on that date. She did not meet him until four or five months after the will was made. He could scarcely have been considered by the testatrix as a surviving husband, and he could not have been included among those whom testatrix intended to refer to in her will.

We are of the opinion that the testatrix, by inserting the provision in her will relied on as "providing for" or "mentioning" a later-acquired husband, was merely adopting the means in common use of preventing a contest of the will or of its provisions. She was not providing for her future husband in the will or mentioning him in such a way as to show an intention not to make such a provision.

The judgment appealed from is affirmed. Appellants will bear respondent's costs on appeal.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied February 14, 1951, and appellants' petition for a hearing by the Supreme Court was denied March 15, 1951.