[L. A. No. 22437.   In Bank.   Sept. 25, 1953.]

Estate of SALLIE LEFTWICH DUKE, Deceased. HARRY G. LOGAN, Appellant, v. JESS O. SHELBY, JR., as Executor, et al., Respondents.

510

David H. Thompson, Riley & Ferguson and John M. Riley for Appellant.

Russell G. Taliaferro for Respondents.

EDMONDS, J.—The petition of Harry G. Logan to revoke the probate of the will of Sallie L. Logan, his deceased wife, was denied. The appeal from the judgment subsequently entered requires a construction of the will in connection with the provisions of section 70 of the Probate Code.

There is no controversy as to the facts. In April, 1949, the testatrix obtained an interlocutory decree of divorce from Carl L. Duke. One month later, she executed the will, which has been admitted to probate. By this will she gave the bulk of her estate to her daughter, Leah Jamison Herzer, with an alternative gift to her grandchildren, in the event the daughter should predecease her. Jess O. Shelby, a grandson, was

named executor. Her marriage to Logan occurred in May, 1950, and continued until her death in November of 1951.

The will includes the following provision:

"FOURTH: I have, except as otherwise specifically provided in this will, intentionally and with full knowledge, omitted to provide for my former husband, CARL L. DUKE, and for any child or children, relatives or heirs who may be living at the time of my death, including any person or persons who may, after the date of this will, become my heir or heirs by reason of marriage or otherwise."

As a conclusion of law from the facts which have been stated, the court declared that the will showed on its face the intention of the testatrix to make no provision for Logan by excluding specifically a class of which he is a member.

In the District Court of Appeal, over the objection of the appellant, the respondents were permitted to offer additional evidence bearing upon the intent of the testatrix. It was stipulated that, in lieu of hearing oral testimony, the affidavits of Leah Jamison Herzer and Jess O. Shelby might be considered.

According to those affidavits, Logan and the testatrix were acquainted for a period of about nine years prior to their marriage. They visited each other's homes, both before and after the death of Logan's former wife in February, 1949. In July of that year, he and the testatrix disclosed to the affiants their intention to be married as soon as her divorce became final. Their plans were announced publicly the following month.

Logan takes the position that section 70 of the Probate Code prohibited the consideration of extrinsic evidence concerning the intent of the testatrix to make provision for him or to exclude him from her will. Furthermore, he contends, the District Court of Appeal erred in permitting the introduction of additional evidence on appeal. His final argument is that, even if the extrinsic evidence properly may be considered, the will cannot be construed as showing an intention of the testatrix not to provide for him.

Section 70 of the Probate Code provides: "If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such pro-

vision; and no other evidence to rebut the presumption of revocation can be received.''

The policy of law which underlies this section has been declared to be the social disfavor toward a testator's failure to provide for a surviving spouse. (*Sanders* v. *Simcich*, 65 Cal. 50, 52 [2 P. 741]; *Rundell* v. *McDonald*, 41 Cal. App. 175, 181 [182 P. 450].) As the court said in the Sanders case, ''[t]he law presumes that the subsequent marriage of a testator has wrought such a change in his condition in life as to cause him to destroy or cancel a previous will; and does not admit of evidence to the contrary unless provision has been made according to law for wife and children who have survived him.'' (P. 52.)

At common law, a revocation of a will because of a subsequent change in domestic relations of a testator was based upon his implied intention. (See *Estate of Meyer*, 44 Cal.App. 289, 291 [186 P. 393]; 1 Page on Wills [Lifetime ed.], § 507 et seq.; Atkinson, Handbook of the Law of Wills [1937], § 166, pp. 400-404.) In California, the doctrine of implied revocation has been replaced by a statutory presumption of revocation which operates upon the showing that the spouse married the testator after the making of the will and survived the maker. (*In re Comassi*, 107 Cal. 1, 4 [40 P. 15, 28 L.R.A. 414]; *Estate of Meyer, supra,* p. 291.) These things being shown, the will is revoked as to the spouse, regardless of what may have been the wishes of the deceased unless the testamentary document includes: (1) provision for the spouse by marriage contract; (2) provision for the spouse in the will; or (3) mention of the spouse therein in such way as to show an intention not to make such provision. (Prob. Code, § 70; *Corker* v. *Corker*, 87 Cal. 643, 648 [25 P. 922]; *Estate of Turney*, 101 Cal.App.2d 720, 722 [226 P.2d 80].)

There is no contention that Logan was provided for by a marriage contract or in the will. The respondents contend that, by the disinheriting clause of the will, Logan was ''in such way mentioned therein as to show an intention not to make such provision.'' In reply, Logan takes the position that the clause is of the most general nature and cannot be construed as indicating an intention to exclude an after-acquired husband.

Considering the word ''mention,'' as used in this section, this court said in *Estate of Kurtz*, 190 Cal. 146 [210 P. 959]: ''No reason is perceived why the wife could not be 'mentioned' by any description that would include her. Certainly it would

not be necessary to mention her by name and to include her, as she was included, in the description of a class, 'mentions' her as effectually as if she had been named therein." (P. 149.)

Later cases, construing somewhat similar exclusionary clauses, have tended to restrict the broad rule stated in the Kurtz decision. An apparent basis for this tendency is the recognition that to permit avoidance of revocation of a will by such generally worded exclusionary clauses as are commonly used for other purposes may subvert the statutory purpose.

█ Where a will has been executed prior to the marriage, it is probably the unusual case in which a person does so intending either to provide for or to exclude a future spouse. And, although a testator need not make provision for such a spouse, he is required to bear in mind the possibility of a subsequent marriage and the serious changes in domestic relations resulting therefrom. The Supreme Court of Georgia said of a similar statute: "The object of the provision is to secure a specific moral influence upon the testamentary act— the moral influence of having in mind a contingent event so momentous as marriage . . . , and so deserving of consideration in framing a testamentary scheme." (*Ellis* v. *Darden*, 86 Ga. 368, 372 [12 S.E. 652, 653, 11 L.R.A. 51]; quoted with approval in *Estate of Meyer, supra*, p. 292.)

█ Accordingly, although broad enough to include a spouse, exclusionary clauses which fail to indicate that the testator contemplated the possibility of a later marriage have been held to be insufficient to avoid a revocation of the will. (*Estate of Axcelrod*, 23 Cal.2d 761 [147 P.2d 1] [exclusion of "all my heirs who are not specifically mentioned herein"]; *Estate of Rozen-Goldenberg*, 1 Cal.App.2d 631 [37 P.2d 132] [exclusion of heirs living at the time of testatrix' demise]; *Estate of Turney, supra* [omission of "my heirs living at the time of my demise"]; cf. *Estate of Ryan*, 191 Cal. 307, 311 [216 P. 366] [naming future spouse executrix held insufficient to indicate "that decedent contemplated matrimony" at the time the will was drawn].)

A further inquiry, and one which is decisive in this case, is whether to be sufficient such a clause must show that the testator contemplated marriage to a specific person. This question has not been considered in California but a statute almost identical in wording to Probate Code, section 70, was construed in *In re Hall's Estate*, 159 Wash. 236 [292 P. 401].

There the will provided: "I hereby direct that in the event that I should remarry that said marriage shall in no wise alter or affect the disposition of my property but that . . . my separate property shall be distributed in the manner hereinbefore set forth. . . ." It was further provided that a surviving spouse should receive only the community property.

Although recognizing that the clause did not show that the testatrix had in mind marriage to a particular person, the court held that the clause was sufficient to avoid a revocation of the will. "The words 'my husband' spoken in the future tense are as specific as words commonly used to describe after-born children, and it is a common practice to make provision in wills for any after-born child, which practice we . . . have upheld." (292 P. 403.) In practice, a testator may have good grounds for preferring that his will stand despite any future marriage, and no sound reason is suggested why he may not express his intention by a clause referring to a future spouse in general terms. The Hall case is persuasive authority for permitting a testator to do so.

In the will presently under consideration, the testatrix has excluded "any person or persons who may, after the date of this will, become my heir or heirs *by reason of marriage* or otherwise." (Emphasis added.) By this provision she clearly stated an intention not to provide for a class of persons which necessarily would include a future spouse. In addition, she declared that the classification includes any person who may thereafter become her heir "by reason of marriage," a phrase which must necessarily refer to *her* future marriage, if it is to be given legal significance. Under such circumstances, the will mentioned a future spouse in such way as to show an intention not to provide for him.

A substantial portion of the briefs of both parties has been devoted to argument concerning the admissibility of extrinsic evidence to establish the testatrix' intention. This evidence was admitted on the authority of *Estate of Kurtz, supra.*

In that case, the testator disinherited "each and all persons whatsoever claiming to be, and who may be, my heirs at law, except as such may be determined by this will, and if any of such parties or such heirs, or any person whomsoever who, if I died intestate, would be entitled to any part of my estate, shall [attack the will], I hereby give . . . to said person One ($1.00) Dollar. . . ." The probate court refused to receive extrinsic evidence showing that the will was executed on the day prior to the decedent's marriage. Upon appeal, the re-

jection of such evidence was held to be erroneous. "It was admissible for the purpose of showing who the maker of the will intended to include by the phrase 'any person whomsoever who, if I died intestate, would be entitled to any part of my estate,' a phrase which, if he had not been then engaged to marry the contestant, would be somewhat ambiguous, but which would be made certain by showing the fact of such engagement. Evidence is always admissible to show extrinsic facts which serve to explain the meaning of ambiguous words appearing on the face of a will, and this evidence was admissible for that purpose." (P. 149.)

Logan argues that the Kurtz case was overruled by *Estate of Ryan, supra,* and *Estate of Axcelrod, supra.* However, neither of these decisions disapproved the Kurtz case, although in *Estate of Axcelrod* the court expressly withheld approval of that portion of the opinion which sanctioned the taking of extrinsic evidence. In both the Ryan and Axcelrod cases the court was confronted with testamentary language differing from that considered in *Estate of Kurtz,* and it very properly distinguished the latter decision upon that basis.

▉ Although the Kurtz decision correctly holds that extrinsic evidence may be received to resolve an ambiguity resulting from uncertain language appearing in a will (Prob. Code, § 105; *Estate of Kearns,* 36 Cal.2d 531, 537 [225 P.2d 218]), the application of the rule to the will involved in that case is questionable. Such words as "heirs at law," "intestate," and the like, rather than presenting an ambiguity concerning whether a testator had in mind the possibility of a future marriage, are merely noncommittal upon the issue. They serve to indicate neither the presence nor absence of such a mental state, and to remedy such omission by resort to extrinsic evidence would be contrary to the express terms of Probate Code, section 70. (*Cf. Estate of Ryan, supra,* p. 310; *Estate of Garraud,* 35 Cal. 336, 341-342.)

In the present case, no uncertainty appears in the terms of the will by which a future spouse is excluded. Accordingly, extrinsic evidence concerning the testatrix' intention in this regard should not have been received. ▉ However, because such evidence merely tended to support the correct legal conclusion of the trial court concerning the effect of the will, no prejudice resulted to either party.

▉ Logan also appealed from the order denying his motion to vacate the judgment. As no appeal lies from such

an order, the latter appeal must be dismissed. (Prob. Code, § 1240; see *Estate of Winslow,* 128 Cal. 311, 312 [60 P. 931]; *cf. In re Walkerly,* 94 Cal. 352, 353 [29 P. 719]; *In re Seymour,* 15 Cal.App. 287, 288-290 [114 P. 1023].)

The judgment is affirmed and the purported appeal from the order is dismissed.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

I reiterate the views expressed in my concurring opinion in *Estate of Axcelrod,* 23 Cal.2d 761, 769 [147 P.2d 1]. The words in the will in the Axcelrod case which are held not sufficient to escape the revocatory effect of marriage after execution of the will were that the testator intentionally omitted all "heirs" not mentioned in the will and expressly disinherited them. In the present case the only words in addition to "heirs" are "heirs by reason of marriage or otherwise." That is not sufficient as the word "heirs" alone would include an heir by marriage as well as by consanguinity and the use of "heirs" alone is not a sufficient mentioning under the Axcelrod case to disinherit a spouse married after the execution of a will. *Estate of Kurtz,* 190 Cal. 146 [210 P. 959] is to the contrary but that case, although distinguished in the Axcelrod case, was in effect overruled thereby. (See discussion 32 Cal.L.Rev. 213.)

The statute (Prob. Code, § 70) provides that if a person is married after the execution of the will, the will is revoked as to the after acquired spouse unless the *spouse* is in such way "mentioned" therein as to show an intention not to make provision for him or her. The latest general definition of "mentioned" is: "As a verb, 'mention' is defined in Webster's New International Dictionary, 2d edition (1943), as 'To make mention of; to refer to . . . casually; to specify, esp. by name; to name,' and as a noun the word is employed to indicate 'a speaking or notice, esp. in a brief or cursory manner; a specification, usually by name; casual introduction into speech or writing; naming, esp. incidentally.'" (*Hunt v. Mayor & Council of Riverside,* 31 Cal.2d 619, 626 [191 P.2d 426].) Specifically applied to section 70, various factors must be considered in determining the sufficiency of the words of mention to escape revocation. Having in mind the words used in *Estate of Axcelrod, supra,* 23 Cal.2d 761, the court

there said: "A person who was then a stranger, both in consanguinity and affinity, and whose subsequent relationship was yet to be projected, could scarcely have been considered by the testatrix as an 'heir,' much less, a surviving husband. She said in her will, 'I *have* intentionally *omitted* all of my *heirs* who are not specifically mentioned herein, *intending thereby* to *disinherit* them . . .' (Italics added.)  Insofar as the operation of section 70 of the Probate Code is concerned her intention is to be determined only as of the date of the execution of the instrument.  (See *Estate of Carter* (1942), 49 Cal.App.2d 251, 254 [121 P.2d 540].)  A man does not 'omit' the name of his child from a document if he has no child; *a woman does not 'omit' her husband from her will if she has no husband in fact or in contemplation. . . .*

"Mere general phraseology such as that which is employed in the will now before us cannot be construed to mention the appellant—a subsequently acquired husband—'in such way . . . as to show an intention not to make' provision for him. He is not mentioned at all.  The only word used which could possibly include him is the word 'heirs.'  But at the time the will was executed the testatrix had no husband who could become an 'heir.'  If she was at that time contemplating marrying anyone it may have been someone other than appellant.  The will does not mention appellant by name or by contemplated relationship or otherwise in any way by which he can be identified as a particular person who was in her mind at that time.  Since it does not identify him by name or by contemplated relationship, or designate a classification which shows on its face that it necessarily was then the intention of the testatrix to include therein a subsequently to be acquired husband, it cannot be held that such a subsequently acquired husband has been mentioned. . . .

" 'It would appear that the intention [if any] to make no provision for the future surviving spouse would have to be set out with greater certainty and explicitness than in the instant case if the revocation provided by section 70 of the Probate Code is to be averted, where, as here, there is no marriage contract and no provision for such survivor in the will.' " (*Estate of Axcelrod,* 23 Cal.2d 761, 767 [147 P.2d 1]; emphasis added.)  In *Estate of Turney,* 101 Cal.App.2d 720 [226 P.2d 80], the words used by the testatrix were that she had omitted to provide for "my heirs *living at the time of my demise.*"  They were held insufficient to disinherit an after

acquired spouse, the court stating: "A party seeking to rebut the statutory presumption of revocation must bring himself within the *literal* terms of one of the exceptions. (See *Corker v. Corker,* 87 Cal. 643 [25 P. 922]; *Estate of Smith,* 15 Cal. App.2d 548 [59 P.2d 854].)" (*Estate of Turney,* 101 Cal.App. 2d 720, 722 [226 P.2d 80]; emphasis added.)

To the same effect are *Estate of Rozen-Goldenberg,* 1 Cal. App.2d 631 [37 P.2d 132], and *Estate of Ryan,* 191 Cal. 307 [216 P. 366].

From the foregoing it is and should be the rule that there is not sufficient mention of the after acquired spouse to prevent revocation unless, on the face of the will, the prospective spouse is named or if designated by a general term it appears that the testator or testatrix contemplated marriage. This gives meaning and effect to section 70 and prevents its evasion by general words which do not indicate any real intention to disinherit an after acquired spouse because the question was never really given concrete consideration by the testator or testatrix.

I would, therefore, reverse the judgment.

SCHAUER, J.—I dissent.

In my view the policy and the express law of this state as enunciated in section 70 of the Probate Code, and as upheld by this court in *Estate of Axcelrod* (1944), 23 Cal.2d 761, 767-768 [147 P.2d 1], disclose the complete untenability of the majority's discussion and conclusion.

In accord with section 70 and *Estate of Axcelrod* I would reverse the judgment.