[Civ. No. 25687. Second Dist., Div. One. Dec. 13, 1961.]

Estate of A. Z. LUNN, Deceased. ANNA SUE SAPP, Claimant and Appellant, v. ANN DAUWALDER LUNN, Claimant and Respondent.

Harold Thomasian and Cyril A. Walton for Claimant and Appellant.

Spencer & Harris and Philip H. Harris for Claimant and Respondent.

LILLIE, J.—From an adverse judgment in a proceeding to determine her interest and the interests of others in the estate of her deceased father (Prob. Code, § 1080), petitioner has appealed. She has also appealed from the "decision" of the trial court, its "conclusions of law" and from the order denying a new trial.

Decedent Lunn died on February 27, 1960. He was survived by his wife, respondent herein, whom he married (September 5, 1959) approximately three months after the execution of his will (June 9, 1959) in which he declared that he was "unmarried." Also surviving him, in addition to appellant, were two other children, all issue of a previous marriage, and three grandchildren. To each of the aforesaid lineal descendants the will bequeathed "the sum of One Dollar ($1.00), and no more." Insofar as here pertinent, the provisions relating to the residue and remainder of the estate are as follows:

"(A) In the event that I am a married man at the time

of my death and there is no divorce, annulment or separate maintenance proceeding pending at the time of my death and/ or if there is no Interlocutory Judgment of Divorce existing at the time of my death, in such event I give, devise and bequeath all of my estate to my wife.'' The efficacy of such dispositive clause was properly before the trial court under section 1080, *supra,* even though the will had previously been admitted to probate. (*Estate of Challman,* 127 Cal.App.2d 736, 739-740 [274 P.2d 439].)

Since we have here a post-testamentary marriage, the narrow issue presented is whether the will was revoked as to respondent by virtue of section 70 of the Probate Code, which has replaced the common law doctrine of implied revocation. That statute provides: ''If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received.''

The trial court found that respondent, the validity of whose marriage to decedent is not disputed, was ''provided for in the will'' and she was therefore entitled to the residue and remainder of the estate after payment of the specific legacies above mentioned to decedent's children and grandchildren. In reaching this conclusion, no oral evidence was taken; however, the trial court did receive an affidavit, subscribed to by respondent, which averred (among other things) that she first met the decedent about December 1, 1958, and that they became engaged to be married about August 1, 1959. A motion to strike this affidavit was denied, which ruling was one of the grounds of appellant's motion for a new trial. In the light of the reasoning in *Estate of Poisl,* 44 Cal.2d 147 [280 P.2d 789], and *Estate of Duke,* 41 Cal.2d 509 [261 P.2d 235], both interpreting section 70 and, at least by analogy, the portions thereof here applicable, we have concluded that the judgment properly determined the interests of all parties and that the record otherwise discloses no error requiring a reversal.

Arguing that provision must be made for a spouse as *the spouse,* appellant contends that the presumption of revocation (Prob. Code, § 70) was unrebutted because the will neither (1) discloses decedent's contemplation of marriage to any particular person nor (2) designates the contemplated

spouse by name. She emphasizes the asserted fact that of some fourteen reported cases (commencing in 1931) which involve section 70, directly or indirectly, in only three was the presumption of revocation held to have been overcome: *Estate of Duke, supra,* 41 Cal.2d 509; *Estate of Bridler,* 165 Cal.App.2d 486 [331 P.2d 1028]; and *Estate of Lapidus,* 123 Cal.App.2d 289 [266 P.2d 803]. Significantly, *Bridler* and *Lapidus* were decided subsequent to *Duke*; and if, as has been observed, there was formerly considerable confusion in the treatment of cases arising under the governing statute (32 Cal.L.Rev. 213, 215, 219), the decision in *Duke* has clarified the prevailing view and resolved any apparent inconsistencies. (42 Cal.L.Rev. 710, 712.) As stated above, its rationale (which was followed in *Estate of Poisl, supra,* 44 Cal.2d 147) is here controlling. Portions of the opinions in *Bridler, Lapidus* and *Poisl,* relied on by appellant, have either been taken out of context or otherwise misinterpreted. The terminology used in the pertinent clause is the determinative factor, whether it serves to disinherit or make provision for the surviving spouse—as pointed out in *Poisl,* the will must show the *possibility* of a future marriage "whether we are speaking of disinheritance or making provision for the after acquired spouse." (44 Cal.2d 147, 149.)

 Pertinent to the discussion which follows, it appears to be settled that section 70 was enacted for the benefit of the wife. "It is the policy of the law that wife and children must be provided for." (*Sanders* v. *Simcich,* 65 Cal. 50, 52 [2 P. 741].) *Estate of Duke,* 41 Cal.2d 509 [261 P.2d 235], declares: "The policy of the law which underlies this section has been declared to be the social disfavor toward a testator's failure to provide for a surviving spouse." (P. 512.) Implicit in the result reached by the Supreme Court in *Estate of Poisl* is a similar view of the statute; there provision (*amounting to less than her intestate share*) was made for the wife under her maiden name without any indication that a future marriage was contemplated, and it was held that section 70 operated to revoke the will as to the spouse. In the case at bar, of course, respondent as the residuary legatee and devisee stands to receive substantially more than she would take in the event of intestacy; "To revoke the will and thereby diminish the share of the spouse would indeed seem anomalous" (44 Cal. L. Rev. 167, 169) in the light of the policy considerations recognized in the cases just mentioned.

 Contrary to the first appellant's contentions, it is

not necessary for the pertinent clause to indicate that the decedent at the time of its execution contemplated marriage to a specific person. Precisely the same question was presented in the *Duke* case, and the majority adopted the reasoning of the Washington court *In re Hall's Estate,* 159 Wash. 236 [292 P. 401], which, it is noted, concerned a statute "almost identical in wording to Probate Code, section 70" and which, we note, involved certain language in the particular clause almost identical to that used by the testator in the present case.[1] Analyzing the *Hall* case, the court stated in *Estate of Duke*: "Although recognizing that the clause did not show that the testatrix had in mind marriage to a particular person, the court held that the clause was sufficient to avoid a revocation of the will. 'The words "my husband" spoken in the future tense are as specific as words commonly used to describe after-born children, and it is a common practice to make provision in wills for any after-born child, which practice we . . . have upheld.' (292 P. 403) . . . In the will presently under consideration, the testatrix has excluded 'any person or persons who may, after the date of this will, become my heir or heirs *by reason of marriage* or otherwise.' (Emphasis added.) By this provision she clearly stated an intention not to provide for a class of persons which necessarily would include a future spouse. In addition, she declared that the classification includes any person who may thereafter become her heir 'by reason of marriage,' a phrase which must necessarily refer to *her* future marriage." (*Estate of Duke,* 41 Cal.2d 509, 514 [261 P.2d 235].)

In *Estate of Poisl,* in turn, the reasoning of the *Duke* case is analyzed as follows: "The reasoning of the *Duke* case is that, while the clause did not disinherit the spouse by name, it showed a contemplation by the executrix of a *possibility* of marriage in the future, and the effect that marriage would have upon the will; that is, intent to mention a future spouse and to disinherit him. Thus the *Duke* case is readily distinguishable from the case at bar except that it does indicate that the will must show a contemplation of a future marriage on the part of the testator to comply with the fundamental pur-

[1]Pertinent provisions in the *Hall* will: ". . . But *in the event* that I shall remarry and that my husband survive me, then and *in that event* I hereby give, devise and bequeath unto my surviving spouse all of my interest in the community property . . ." (emphasis added). Pertinent provisions in the *Lunn* will: "*In the event* that I am a married man at the time of my death . . . *in such event* I give, devise and bequeath all of my estate to my wife." (Emphasis added.)

pose of section 70, *whether we are speaking of disinheritance or making provision* for the after acquired spouse." (Emphasis added.) (*Estate of Poisl,* 44 Cal.2d 147, 149 [261 P.2d 235].) As stated earlier, it is the terminology of the clause that is decisive. *Estate of Duke* held that the use of the conditional future[2] or prospective language,[3] namely, "any person . . . who *may,* after the date of this will, become my heir or heirs by reason of marriage" distinguished the case from *Estate of Axcelrod,* 23 Cal.2d 761 [147 P.2d 1], where the language employed, namely, "all of my heirs not specifically mentioned herein" gave no indication of any contemplation in the testatrix' mind of future heirs. [██ There is authority for the view that "In the event," the phraseology used by decedent Lunn, likewise refers to a future, rather than a past, event (42 C.J.S. 480). In *Morse* v. *Custis,* 38 Cal.App.2d 573, 576 [101 P.2d 702], it was held that "in the event" is synonomous with "whenever" which is "An adverb of time . . . frequently looking to the future." We pass on, therefore, to the next of appellant's contentions.

██ There is likewise no merit to the claim that decedent's testamentary disposition of the residue must fail because respondent was not designated as the contemplated spouse by name. In this regard, it is only necessary to quote from *Estate of Duke* as follows: "Considering the word 'mention,' as used in this section, this court said in *Estate of Kurtz,* 190 Cal. 146 [210 P. 959] : 'No reason is perceived why the wife could not be "mentioned" by any description that would include her. Certainly it would not be necessary to mention her by name and to include her, as she was included, in the description of a class, "mentions" her as effectually as if she had been named therein.' (P. 149.)" (41 Cal.2d 509, 512, 513.) See also *Estate of Lapidus, supra,* 123 Cal.App.2d 289, 291, where the court stated, referring to *Estate of Duke,* that "it was held that the intention not to provide for the surviving spouse which excludes revocation under section 70, Probate Code, can even be expressed by an exclusionary clause referring to a future spouse in general terms." ██ By analogy, as discussed above, a testator can also provide for a future spouse in general terms or as the member of a class.

██ Finally, it is urged that the trial court erred in denying appellant's motion for a new trial. This claim arises

[2]See 42 Cal.L.Rev. 710, 714.
[3]See 1 U.C.L.A. L.Rev. 400, 402.

from the following circumstances: Over appellant's objection the court received respondent's affidavit which averred, among other things, that she and the testator were engaged to be married; thereupon the matter was taken under submission. Upon motion for a new trial, there were filed supporting declarations (Code Civ. Proc., § 2015.5) which tended to negate the averments in respondent's affidavit. Appellant now complains that respondent's affidavit should not have been considered in the first place without the opportunity of cross-examination; however, since it was received in evidence, she should have been allowed to introduce evidence of the testator's lack of intent to marry at the time in question. Although section 70 provides that "no other evidence to rebut the presumption of revocation can be received," it was held in *Estate of Kurtz,* 190 Cal. 146 [210 P. 959], that "Evidence is always admissible to show extrinsic facts which serve to explain the meaning of ambiguous words appearing on the face of a will, and this evidence was admissible for that purpose." (P. 149.) The *Duke* case approved the rule announced in *Estate of Kurtz* but concluded that its application to the facts therein was questionable. (41 Cal.2d 509, 515.) As in *Estate of Duke,* substituting "provided for" in place of "excluded," "no uncertainty appears in the terms of the will by which a future spouse is provided for." (P. 515.) Continuing with the rationale of the *Duke* case, respondent's affidavit should not have been received; "However, because such evidence merely tended to support the correct legal conclusion of the trial court concerning the effect of the will, no prejudice resulted to either party." (P. 515.) Appellant's reliance on certain statements in *Estate of Torregano,* 54 Cal.2d 234 [5 Cal.Rptr. 137, 352 P.2d 505], appears to be misplaced. That case dealt with the admissibility of extrinsic evidence to explain the *unintentional* omission to provide for natural heirs; here, of course, the situation is wholly otherwise.

■ An order denying a new trial in a probate proceeding is not appealable (*Estate of Smith,* 175 Cal.App.2d 803, 805 [1 Cal.Rptr. 46]), and therefore appellant's attempted appeal from the denial of a new trial herein must be dismissed. The same disposition must be made of her purported appeals from the "decision" and the "conclusions of law."

The judgment is affirmed; the appeal from the order (denying a new trial) and all other purported appeals are dismissed.

Wood, P. J., and Fourt, J., concurred.