[L. A. No. 18708.   In Bank.   Mar. 11, 1944.]

Estate of DIANE AXCELROD, Deceased.   BEN WILENCE, Appellant, v. ETTA POCKER, as Executrix, etc. et al., Respondents.

Ralph Bernstein for Appellant.

Louise Mason for Respondents.

SCHAUER, J.—This is an appeal, upon the judgment roll alone, by a surviving husband from an "Order Establishing Heirship" and denying to appellant the one-half interest in the estate of his deceased wife to which he claims that the provisions of section 70 of the Probate Code entitle him. His chief attack on the order is made upon the ground that the trial court erred in its construction of certain provisions contained in the last will and testament of the deceased wife and in its application of the above mentioned section of the Probate Code to the admitted facts. It appears to us that such attack is meritorious and that the order must be reversed.

Appellant's verified petition for determination of heirship, filed in the court below, alleges, so far as material to the issues presented on this appeal, that decedent, Diane Axelrod, also known as Diane Wilence, died testate on November 3, 1941; that "Petitioner [appellant] is the surviving spouse of the decedent, and is one of her heirs by virtue of a marriage entered into with decedent on the 17th day of April, 1936, . . . after the execution of decedent's will on December 9, 1935, in which Petitioner is not named or provided for therein, nor was any provision made for your Petitioner by marriage contract"; that decedent's other heirs are nine brothers and sisters (named), including respondents herein;

and that the will is "revoked as to Petitioner, the surviving spouse of decedent, and Petitioner is entitled to distribution of one-half of" decedent's estate. No responsive pleading was filed by any person.

Section 70 of the Probate Code, upon which appellant relies as legal ground for his claim, provides as follows: "If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received."

The will here involved devises and bequeaths the entire estate, except as provided by paragraph "Sixth" of such will, to four named sisters of decedent. Respondents are two of such sisters. Paragraph "Sixth" reads as follows: "I have intentionally omitted all of my heirs who are not specifically mentioned herein, intending thereby to disinherit them, and if any such persons, or heirs, or any devisees or legatees under this Will . . . shall . . . seek to establish or assert any claims to my estate or any part thereof, excepting under this Will, or attack [etc.] . . ., then . . . I hereby give and bequeath to such person or persons the sum of ONE ($1.00) DOLLAR and no more, in lieu of any other share or interest in my said estate. . . ."

In their briefs the parties to this appeal agree, in effect, that no evidence was offered to or received by the trial court. Despite the absence of such evidence and of any pleading by respondents in answer to appellant's petition to determine heirship, that court signed and filed a document entitled "Findings of Fact and Conclusions of Law" in which it is recited that "the court . . . found and ordered . . . that under the proper construction of Section Sixth of the decedent's Will that the petitioner . . . would be entitled to the sum of One Dollar ($1.00) and no more should he claim any part of this estate"; that a motion for a new trial was made and granted "for the purpose of further considering said matter, and after further considering said matter and having heard the additional arguments of counsel" the court makes "findings of fact" that, among other things, decedent's will "was not drawn by the decedent but was drawn by a person trained in the law and the various words therein used were used in

their technical sense and meaning and were intended by the decedent to have the technical sense and meaning which would be attributed to said words by a person trained in the law. That the word 'heirs' as used in section Sixth of said Will was used by the decedent in its technical sense and meaning''; ''That the decedent and petitioner, Ben Wilence, were married subsequent to the execution of said Will and no provision was made for Ben Wilence by marriage contract; that had the decedent died intestate, petitioner . . . would have succeeded to a portion of the decedent's estate; that said petitioner would have been an heir of the decedent had the decedent died intestate and was one of the class of persons included within the meaning of the word 'heirs' as used in Section Sixth of said Will . . .''; ''That said petitioner was provided for in said Will to the extent of One Dollar ($1.00) should he do or seek to do any of the things described in section Sixth of said Will and said petitioner was mentioned in said Will in section Sixth thereof in such manner as to show the intention on the part of the decedent to make no further or other provision for him''; ''That it is not true that said Will is revoked as to the petitioner, Ben Wilence and it is not true that said Ben Wilence is entitled to distribution of one-half of said estate or any part thereof other than said sum of One Dollar ($1.00) which he shall be entitled to should he do or seek to do any of the things mentioned in section Sixth of said Will.'' As conclusions of law the trial court then declares ''That petitioner, Ben Wilence, is, and shall be entitled to the sum of One Dollar ($1.00) and no more should he do or seek to do any of the things mentioned in section Sixth of said Will,'' and that the entire remainder of the estate shall be distributed to the persons named in the will. An ''Order Establishing Heirship'' was entered accordingly. Regardless of whether the making of findings of fact was proper under the recited circumstances (see 24 Cal.Jur. 950-953, § 191; *Welch* v. *Alcott* (1921), 185 Cal. 731, 754 [198 P. 626]; *cf.* *O'Day* v. *Superior Court* (1941), 18 Cal.2d 540 [116 P.2d 621]; *Bales* v. *Superior Court* (1942), 21 Cal.2d 17 [129 P.2d 685]), we are of the opinion that the controlling conclusions of law declared by the trial court in this case cannot be sustained. (Some of the quoted ''findings of fact'' are obviously conclusions of law.)

In support of the conclusion that the ''one dollar'' clause in decedent's will constituted a ''provision'' for appellant and

that therefore he is entitled to no more than that sum, respondents rely upon *Estate of Kurtz* (1922), 190 Cal. 146 [210 P. 959]. But in that case there was different testamentary language to be construed, and an extrinsic factual basis upon which to interpret it was held admissible in evidence. The pertinent portion of the will there involved provided that (see p. 148 of 190 Cal.) : "if ... *any person whomsoever who, if I died intestate,* would be entitled to any part of my estate, shall ... establish or assert any claim to my estate, or any part thereof, excepting under this will, or attack or oppose or seek to set aside the probate of this will ... or endeavor to secure or procure any part of my estate other than through or under this will; then ... I hereby give ... to said person ... the sum of One ($1.00) Dollar and no more in lieu of any other share or interest in my estate, and all the rest of the ... share ... which would otherwise have gone to such person or persons by devise or inheritance, *or which they might be entitled to take under any provision of law* shall go ... to my said father. ..." (Italics added.)

The above quoted language, "any person whomsoever, who if I died intestate would be entitled to any part of my estate," in the light of the subsequent phrase referring to any interest in the estate "which they might be entitled to take under any provision of law," and other circumstances appearing, was construed by the court to be "somewhat ambiguous" and was said to justify the taking of oral evidence to explain it. The court said (p. 149 of 190 Cal.) : "The appellant sought to show that at the time the will was made the testator was already engaged to be married to the contestant, as indeed would almost be presumed so short a time before [the will there was executed on the day preceding the marriage of the contestant and the testator], but the court sustained an objection of the respondent to the evidence. This was clearly error. It was admissible for the purpose of showing who the maker of the will intended to include by the phrase 'any person whomsoever who, if I died intestate, would be entitled to any part of my estate,' a phrase which, if he had not been then engaged to marry the contestant, would be somewhat ambiguous, but which would be made certain by showing the fact of such engagement. Evidence is always admissible to show extrinsic facts which serve to explain the meaning of

ambiguous words appearing on the face of a will, and this evidence was admissible for that purpose.

"The wife of the testator is therefore 'provided for' in the will."

We are not here concerned with either questioning or approving the above quoted holding that extrinsic evidence was admissible notwithstanding the provisions of the then section 1299 of the Civil Code (now section 70 of the Probate Code, hereinabove quoted) purporting to limit the evidence which could be received to rebut the presumption of revocation. It is sufficient to point out that in their briefs the parties here agree, in effect, that no extrinsic evidence whatsoever was offered to or received by the trial court; there is, hence, no claim that the testatrix and contestant were even acquainted at the time the will was executed, much less engaged to marry, and there is no language in the will which is the equivalent of "any person whomsoever who, if I died intestate, would be entitled to any part of my estate," or the further phrase disposing of any interest "which they [any person or persons not specifically named in the will] might be entitled to take under any provision of law."

Respondents also cite to us the cases of *Estate of Wilson* (1920), 184 Cal. 63, 67 [193 P. 581], and *Estate of Newman* (1924), 68 Cal.App. 420, 425 [229 P. 898], to the effect that "The word 'heirs' is a technical term, and in its 'technical sense' one's 'heirs' means the persons who would be entitled to succeed at his death to his estate in case of intestacy, by virtue of our statutes relative to succession." However, in neither of those cases were the claims of an after-acquired spouse involved; the court was not there concerned with interpreting the wills in respect to the application and operation of section 70 of the Probate Code or its predecessor section in the Civil Code (§ 1299). The same observation is true in regard to *Estate of Watts* (1918), 179 Cal. 20 [175 P. 415].

Moreover, as stated in the Wilson case (pp. 67-68 of 184 Cal.), ". . . the paramount rule [is] that the ultimate question is the intention of the testator as expressed in the will, and that technical rules of interpretation must yield to an intention clearly expressed. The real question . . . is, What did the testator mean in view of the language he has used in his will, in the light afforded by certain rules of interpretation which must prevail where a contrary intent does not clearly appear on the face of the will? Such is the question here

involved. We have said: 'Of this class of questions it may be said, with more truth, perhaps, than of any other, that each case depends upon its own peculiar facts, and that precedents have comparatively small value. Except for the establishment of general principles, very little aid can be procured from adjudged cases in the construction of wills.' [Citations.]''

In the case now before us the testatrix, in using the language (hereinabove quoted) relied upon by respondents, apparently had in contemplation only the persons, or claimants under persons, who at the time of execution of the will stood in such relationship to the testatrix that they could *then* conceivably come within the classification of ''heirs'' or potential heirs. A person who was then a stranger, both in consanguinity and affinity, and whose subsequent relationship was yet to be projected, could scarcely have been considered by the testatrix as an ''heir,'' much less, a surviving husband. She said in her will, ''I *have* intentionally *omitted* all of my *heirs* who are not specifically mentioned herein, *intending thereby* to *disinherit* them . . .'' (Italics added.) Insofar as the operation of section 70 of the Probate Code is concerned her intention is to be determined only as of the date of the execution of the instrument. (See *Estate of Carter* (1942), 49 Cal.App.2d 251, 254 [121 P.2d 540].) A man does not ''omit'' the name of his child from a document if he has no child; a woman does not ''omit'' her husband from her will if she has no husband in fact or in contemplation.

Marriage is a civil contract which not only creates reciprocal rights and obligations as between the contracting parties but which also affects their statuses. ''The law presumes that the subsequent marriage of a testator has wrought such a change in his condition of life as to cause him to destroy or cancel a previous will. . . .'' (*Sanders* v. *Simcich* (1884), 65 Cal. 50, 52 [2 P. 741].) It is the general policy of the law, and the general rule, that upon marriage a previously executed will shall be revoked. (Probate Code, § 70.) Freedom is left, however, for the person who, *having the intended spouse in mind,* desires, by will or marriage contract executed before the wedding, to make ''provision for the spouse'' or to mention the spouse in the will ''in such way . . . therein as to show an intention not to make such provision.'' Mere general phraseology such as that which is employed in the will now before us cannot be construed to men-

tion the appellant—a subsequently acquired husband—"in such way . . . as to show an intention not to make" provision for him. He is not mentioned at all. The only word used which could possibly include him is the word "heirs." But at the time the will was executed the testatrix had no husband who could become an "heir." If she was at that time contemplating marrying anyone it may have been someone other than appellant. The will does not mention appellant by name or by contemplated relationship or otherwise in any way by which he can be identified as a particular person who was in her mind at that time. Since it does not identify him by name or by contemplated relationship, or designate a classification which shows on its face that it necessarily was then the intention of the testatrix to include therein a subsequently to be acquired husband, it cannot be held that such a subsequently acquired husband has been mentioned. If he has not been mentioned it is obvious that provision has not been made for him. Even were there otherwise doubt as to the contention that, by the "one dollar" clause, provision was made for appellant, that doubt is dispelled by consideration of the contextive language in paragraph "Sixth." Therein, the testatrix expressly avows, as to all "heirs who are not specifically mentioned herein," such heirs being persons who are bequeathed one dollar if they contest the will or seek to take otherwise than under it, that it was her intention "to disinherit them." An intention to *disinherit* a husband would be the direct opposite of an intention to *make provision for* him within the purview of the word "provision" as it is used in section 70. Appellant therefore is not in any event, by the terms of decedent's will, either provided for or mentioned as excluded from inheritance.

The facts here involved, insofar as they are disclosed by the record, appear to be more similar to those which were before the District Court of Appeal in *Estate of Rozen-Goldenberg* (1934), 1 Cal.App.2d 631 [37 P.2d 132], than to those which were the basis of the decision in *Estate of Kurtz* (1922), *supra*, 190 Cal. 146. ■ We adopt here the language used by Judge Scott in speaking for his court in the Rozen-Goldenberg case (p. 633 of 1 Cal.App.2d): "It would appear that the intention [if any] to make no provision for the future surviving spouse would have to be set out with greater certainty and explicitness than in the instant case if the revocation provided by section 70 of the Probate Code is to be averted, where,

as here, there is no marriage contract and no provision for such survivor in the will."

The contention of respondents that the findings of fact justify the order and that, on this judgment roll appeal, we must presume that competent evidence supports the findings, cannot be sustained in the light of the circumstances shown. Respondents themselves predicate part of their argument on the assertion that no evidence was introduced, and it is apparent that the only fair construction of the entire record is that the findings and conclusions of the trial court are based exclusively on an interpretation of the quoted portions of the will and the application of section 70 of the Probate Code. Moreover, even if we accept the findings as drawn as being supported by the evidence to the extent that they are findings of *facts*, they do not justify the conclusions of law drawn therefrom or the order from which the appeal is taken. It is therefore unnecessary to consider either appellant's or respondents' further arguments relative to the proposition mentioned.

The order appealed from is reversed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., and Traynor, J., concurred.

CARTER, J.—I concur in the judgment of reversal and in the views expressed in the majority opinion with the exception of what is said therein with respect to the *Estate of Kurtz*, 190 Cal. 146 [210 P. 959]. In my opinion the *Estate of Kurtz* was erroneously decided, and should be expressly overruled. I do not believe that it can fairly be said that the will which was interpreted in that case made provision for the surviving spouse or unborn child of the testator, "or in such way mentioned [them] therein as to show an intention not to make such provision." As I read section 70 of the Probate Code (formerly section 1299 of the Civ. Code) it appears to have been clearly the intention of the Legislature to make mandatory the revocation of a will made prior to marriage where the spouse survives the maker, "unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision"; and I do not believe that this provision can be

satisfied by the use of general language in a will such as "all of my heirs," "any person whomsoever" and the like as indicating an intention on the part of the testator not to make provision for such surviving spouse.

While it may be true that there is a sound basis for a factual distinction between the instant case and the *Estate of Kurtz*, I prefer to base my conclusion in this case upon an interpretation of section 70 of the Probate Code (formerly section 1299, Civ. Code) in direct conflict with that expressed in the opinion of this court in the *Estate of Kurtz*, and consider that case as no longer an authority.