[Civ. No. 40717. Second Dist., Div. Three. Dec. 27, 1972.]

Estate of HARRY PAUL, Deceased.
ROBERT JAY PAUL et al., Petitioners and Respondents, v.
PATTY SUE PAUL, Claimant and Appellant.

**COUNSEL**

Leonard M. Colene for Claimant and Appellant.

Shapiro, Posell & Pilling and Mitchell S. Shapiro for Petitioners and Respondents.

**OPINION**

**SCHWEITZER, J.**—Petitioners, children of decedent by a former marriage, filed a petition for determination of heirship, raising the question as to whether decedent's will was revoked as to his after-acquired spouse under section 70, Probate Code.[1]

*Facts*

There is no dispute as to the facts. In 1968 decedent and Marion Paul were divorced; petitioners are children of that marriage. Thereafter, on November 21, 1968, decedent executed a will; seven days later, on November 28, 1968, he married Patty Sue Paul. Decedent died on June 27, 1971, leaving as his sole heirs at law, his two children by his former marriage (petitioners; respondents on this appeal), and Patty, his after-acquired spouse (appellant on this appeal).

---

[1] Probate Code section 70 provides: "If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is *provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received."

Decedent's will was admitted to probate. The will is on a printed form with handwritten insertions. We quote the pertinent parts, underscoring the insertions:

"FIRST: I declare that the members of my immediate family, including my wife and children, both living and deceased, are as follows:

| | *Patty Sue Paul* |
|---|---|
| *"My son by previous marriage* | *Robert Jay Paul* |
| *"My daughter by previous marriage* | *Barbara Sharon Gordon* |

"SECOND: I hereby give, devise and bequeath, all my property to the following: *one half of my estate to be shared equally by my son and daughter.* . . .

"THIRD: I nominate and appoint *Marion Paul* to serve as my executor, and if *she* fails to qualify, then I nominate *Patty Sue Paul,* as my alternate executor. . . ."

With respect to the will the following additional facts have some significance: it disposes of only one-half of decedent's estate (to decedent's son and daughter); it contains no residuary clause; no provision is made therein for decedent's after-acquired spouse; the will contains no general exclusionary clause. It should also be noted that even though the will was executed one week before marriage, the after-acquired spouse is mentioned, not by her name as of the date of the will, but by the name she would and did acquire on marriage; also she is referred to therein as being a "member[ ] of my immediate family" and as being "my wife."

### Revocation of Will by Marriage

 Under section 70 a will is revoked as to the after-acquired spouse, regardless of what may have been the wishes of the decedent, unless (1) decedent made provision for the spouse by marriage contract, *or* (2) decedent made provision for the spouse in the will, *or* (3) decedent mentioned the spouse in the will "in such way . . . as to show an intention not to make . . . provision" for her. Here, there is no evidence of a marriage contract; the will contains no provision for the spouse; the sole issue is as to the application of the third exception. The trial court concluded that this exception is applicable, and that as a result the will is not revoked as to decedent's widow. The after-acquired spouse appeals from the order based upon these conclusions of law.

 Section 70 expresses a statutory presumption of revocation based upon public policy. (*Estate of Duke,* 41 Cal.2d 509, 512 [261 P.2d 235].) To rebut the presumption of revocation, the determinative factor is the

terminology of the will, "whether it serves to disinherit or make provision for the surviving spouse." (*Estate of Lunn,* 197 Cal.App.2d 848, 851 [17 Cal.Rptr. 705].)

The leading cases that have considered the third exception to section 70 involve exclusionary or disinheritance clauses. Although such a clause 'is not contained in the will in the instant case, these authorities set forth pertinent principles. We find that wills which fail to indicate that the testator contemplated the possibility of a later marriage have been held to be insufficient to avoid a revocation of the will. (See *Estate of Axcelrod,* 23 Cal.2d 761 [147 P.2d 1] [exclusion of "all of my heirs who are not specifically mentioned herein"]; *Estate of Turney,* 101 Cal.App.2d 720 [226 P.2d 80] [omission of "my heirs living at the time of my demise"]; *Estate of Rozen-Goldenberg,* 1 Cal.App.2d 631 [37 P.2d 132] [exclusion of heirs living at time of testatrix' demise].)

On the other hand wills with an exclusionary clause which indicate the possibility of a future marriage, even though the future spouse is not identified, have been held to show an intention not to provide for the spouse, i.e. the will is not revoked as to the spouse. (*Estate of Duke, supra,* 41 Cal.2d 509; *Estate of Kurtz,* 190 Cal. 146 [210 P. 959].) *Duke* involved a clause in a will which, in addition to an exclusionary clause similar to those in the forementioned cases, excluded all persons who may become the testatrix' heirs "by reason of marriage or otherwise." In reaching the conclusion that the will mentioned a future spouse in such way as to show an intention not to provide for him, the court said that while the clause did not disinherit the spouse by name, it showed a contemplation by the testatrix of a possibility of marriage in the future, and the effect that marriage would have upon the will—that is, mention of a future spouse with the intent to disinherit him. *Duke* holds that "the will must show a contemplation of a future marriage on the part of the testator to comply with the fundamental purpose of section 70, whether we are speaking of disinheritance or making provision for the after acquired spouse." (*Estate of Poisl,* 44 Cal.2d 147, 149 [280 P.2d 789].) In *Estate of Kurtz, supra,* 190 Cal. 146, the unmarried testator, one day before marriage, executed a will which made no mention of or provision for his prospective spouse; in the will he expressly disinherited "all persons . . . who may be, my heirs at law. . . ." The court concluded that the will was executed in contemplation of marriage, that it was not necesary to mention the spouse by name since she was mentioned by reference to a described class, i.e., "my heirs at law," and that by being mentioned in such way an intention was shown that the will was not to be revoked as to the spouse. (190 Cal. at p. 149.)

In referring to *Kurtz, Duke* states: "Later cases, construing somewhat similar exclusionary clauses, have tended to restrict the broad rule stated in

the *Kurtz* decision. An apparent basis for this tendency is the recognition that to permit avoidance of revocation of a will by such generally worded exclusionary clauses as are commonly used for other purposes may subvert the statutory purpose." (41 Cal.2d at p. 513.) "The policy of law which underlies . . . section [70] has been declared to be the social disfavor toward a testator's failure to provide for a surviving spouse. [Citations.]" (41 Cal.2d at p. 512.)

Following *Duke* the Supreme Court decided *Estate of Poisl, supra,* 44 Cal.2d 147. In *Poisl* the testator executed a will seven months before marriage, making provision therein for his prospective wife under her maiden name and without making any indication that marriage was contemplated; the will also provided that except as provided therein, the testator had intentionally omitted "to provide for his heirs living at the time of his death." The case involves the second and third exceptions to section 70. The court disposed of the third exception summarily by stating "that the general disinheritance clause in the will does not constitute a mention of Emma in such a way as to show an intention not to make provision for her. (*Estate of Axcelrod,* 23 Cal.2d 761 [147 P.2d 1].)" (44 Cal.2d at pp. 148-149.) As to the second exception, whether the testator made provision for his spouse in the will, the court states: "It being necessary for the testator to have 'in mind' a 'momentous' occasion such as marriage, it follows that merely naming or giving a legacy to a person by name . . . with no indication that she may be a prospective spouse, is not enough to prevent revocation. That indication must appear on the face of the will, and extrinsic evidence is not admissible to show the testator's intention, at least unless there is some ambiguity." (44 Cal.2d at pp. 149-150.) With respect to the second and third exceptions to section 70, the court emphasized that "the will must show a contemplation of a future marriage on the part of the testator to comply with the fundamental purpose of section 70, whether we are speaking of disinheritance or making provision for the after acquired spouse." (44 Cal.2d at p. 149.)

As heretofore mentioned the instant case involves the third exception to section 70. To be applicable, i.e. to prevent revocation as to the spouse, the spouse must not only be mentioned in the will, but the "mentioning" must be with a specific intent, the intention not to provide for her.[2] It is clear that the first of these elements is present—the spouse was "mentioned." Our decision therefore must rest on the question of the testator's intent, the second element; it must be ascertained from the will itself. Since

---

[2]Here the spouse was named as an alternate "executor"; such nomination is not sufficient "provision for" her to prevent revocation under section 70. (*Estate of Ryan,* 191 Cal. 307, 311 [216 P. 366].)

it is reasonable to infer that the will was executed in contemplation of marriage, respondents argue that under *Poisl, Duke* and *Kurtz,* we must conclude that the testator had the intent not to provide for his spouse.

We do not agree with this interpretation. At most the cited cases hold that "contemplation of marriage" is a strong evidentiary factor; none hold that it is conclusive as to intent. Here we have additional evidentiary circumstances—a will drafted by a layman, obviously not trained in the law; the disposition thereby of one-half of the estate to the testator's children; the testator's failure to make disposition of the other half. Under such circumstances it is not unreasonable to infer that the unlearned testator assumed that the undisposed half would be the community property of himself and his after-acquired spouse, over which he had no power of testamentary disposition, and that it would pass to her by operation of law. In drawing these inferences from evidence not before the court in *Poisl, Duke* and *Kurtz,* we emphasize that we are not construing an ambiguous will; our sole inquiry in this proceeding is to ascertain whether the will indicates on its face an intention by the testator to disinherit his after-acquired spouse; if that intention is not clear, section 70 provides a presumption of revocation of the will as to the spouse.

We make these observations to clearly distinguish the instant proceeding from cases which have applied section 102, Probate Code, in attempting to avoid intestacy and cases which have applied the presumption that the testator intended to dispose of all his property. (See *Estate of Beldon,* 11 Cal.2d 108, 111-112 [77 P.2d 1052]; *Estate of Bailess,* 249 Cal.App.2d 970, 974 [57 Cal.Rptr. 850]; 53 Cal.Jur.2d, Wills, § 6, pp. 229-230; 4 Witkin, Summary of Cal. Law (1960) Wills and Probate, § 117, pp. 3112-3113.) Likewise we are not here concerned with the rule set forth in *Estate of Beldon, supra,* at page 112: " 'Courts are not permitted in order to avoid a conclusion of intestacy to adopt a construction based on conjecture as to what the testator may have intended although not expressed.' [Citation.]" As indicated by the cited authorities, these principles are applicable only when the will is ambiguous and is subject to more than one interpretation; they are rules of construction; here we are not required to construe an ambiguous will, but only to ascertain whether the testator mentioned his spouse in such way as to show an intent not to make provision for her.

Returning to the instant case, we note that the presumption of revocation, provided by section 70, is strong. It expresses a policy that the law looks with "disfavor toward a testator's failure to provide for a surviving spouse. [Citations.]" (*Estate of Duke, supra,* 41 Cal.2d 509, 512.) It has been stated: ▮ "Revocation by marriage is set forth as a presumption which can be rebutted only by a clear manifestation of intent on the face of the

will. If the intent of the testator cannot be clearly discerned from the will itself the presumption simply has not been rebutted." (42 Cal.L.Rev. 710, 716.) The burden of proving intent to disinherit is on the proponents of the will. We hold that under the circumstances here presented the proponents have not met this burden and that the will is revoked as to the after-acquired spouse.

### Succession and Distribution

■ The effect of our holding that section 70 revoked the prenuptial will as to the surviving spouse is "that whatever interest the [surviving spouse] would have taken if the deceased had died intestate goes to [her] as the surviving spouse unaffected by the provisions of the will." (*Estate of Piatt,* 81 Cal.App.2d 348, 350 [183 P.2d 919]; see *Estate of Stewart,* 69 Cal.2d 296, 298 [70 Cal.Rptr. 545, 444 P.2d 337]; *Estate of Basore,* 19 Cal.App. 3d 623, 628 [96 Cal.Rptr. 874].)

■ The interest of the surviving spouse which is unaffected by the will is fixed by section 201, Probate Code,[3] as to community property, and by section 221, Probate Code,[4] as to separate property.[5]

In applying section 201 under somewhat similar facts, the court in *Estate of Piatt, supra,* stated at page 350, as to community property, "one-half goes to [the surviving spouse] absolutely by reason of section 201; the other half was subject to decedent's testamentary disposition. But not having made a valid will, as to the interest of the surviving spouse because of section 70, the remaining one-half of the community stands undisposed of by will and hence goes to [the surviving spouse] under the exception made in section 201. This is so because the interest of the surviving spouse to inherit the portion of the community not disposed of by will is an interest which rests in [her] on the death of the [husband] not leaving a valid will. Where the conditions mentioned in section 70 arise, and the will stands revoked as to the interest of the surviving spouse, it is revoked as to all interest [she] would have had if the decedent had died intestate."

The result of this determination is that in the instant case the surviving spouse will be entitled to have distributed to her all of the community prop-

---

[3]Section 201 provides in pertinent part: "Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse. . . ."

[4]Section 221 provides in pertinent part: ". . . If the decedent leaves a surviving spouse, and more than one child . . ., the estate goes one-third to the surviving spouse and the remainder in equal shares to his children. . . ."

[5]No issue is raised on this appeal as to the trial court's finding that the estate consists of both community and separate property.

erty in the estate. As to the separate property of decedent, section 221 clearly provides that one-third thereof shall go to the surviving spouse; the remaining two-thirds shall be divided equally between decedent's two surviving children.

Order determining entitlement to distribution of estate is reversed.

Ford, P. J., and Allport, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied February 22, 1973.