[Civ. No. 49371. First Dist., Div. One. June 18, 1981.]

Estate of SAMUEL GREEN, Deceased.
RUBY AUSTIN GREEN, Petitioner and Respondent, v.
ALBERTA PEAL, as Executor, etc., Objector and Appellant.

590

---

COUNSEL

William L. White for Objector and Appellant.

Robert A. Schroth and Winters & Winters for Petitioner and Respondent.

## OPINION

**RACANELLI, P. J.**—On March 11, 1974, decedent, then an unmarried man, executed his last will and testament in which he designated appellant, his natural sister, as primary beneficiary of his entire estate. Under the relevant provisions of the will, decedent specifically disinherited Arillia Washington—whom he planned to marry—as well as any person claiming as issue of decedent or "any other person not specifically mentioned in this Will, whether related by marriage or not."[1] Decedent never married Arillia but instead married respondent, Ruby Austin, on August 12, 1978. On January 19, 1979, decedent died without issue leaving an estate the bulk of which constituted his separate property. During the ensuing probate respondent filed a petition to determine heirship claiming in essence that since the prenuptial will failed to provide for her, it was effectively revoked under the provisions of Probate Code section 70 entitling her to succeed to all of the community property and one-half of the separate property under the laws of intestate succession. (Prob. Code, §§ 201 et seq., 223; *Estate of Piatt* (1947) 81 Cal.App.2d 348, 350 [134 P.2d 321].) Relying principally on the holding in *Estate of Axcelrod* (1944) 23 Cal.2d 761 [147 P.2d 1] (and cf., dis. opns. in *Estate of Duke* (1953) 41 Cal.2d 509, 516-518 [261 P.2d 235]) the trial court rendered judgment in favor of respondent finding that as to her the will was revoked under the authority of Probate Code section 70 entitling respondent to take under the laws of intestacy. Following denial of appellant's request for reconsideration and motion for new trial, this appeal ensued.

---

[1]The pertinent paragraphs provide as follows:

"THIRD: I hereby declare that I am a widower, that I have no children, that I am contemplating marriage to Arillia Washington, but that I am making no provision in this Last Will and Testament for said Arellia [*sic*] Washington. If any person shall assert and finally establish in a court of competent jurisdiction that he or she is a child of mine, or issue of a child of mine, then I give and bequeath to each such person the sum of ONE DOLLAR ($1.00), and no more. I hereby declare that any such asserted claim of heirship or kinship to me is and would be utterly false and wholly fraudulent.

" . . . . . . . . . . . . .

"SEVENTH: I have specifically failed to provide for ARILLIA WASHINGTON, whether she is my lawful wife or not and I further fail to provide for any other person not specifically mentioned in this Will, whether related by marriage or not."

The sole question on appeal is whether respondent was mentioned in the will in such manner as "to show an intention not to make such provision...." (Prob. Code, § 70) precluding statutory revocation.[2]

## Discussion

 The doctrine of revocation implicit in Probate Code section 70 reflects a strong public policy disfavoring disinheritance of a surviving spouse under the terms of a premarital will in which the testator has otherwise failed to provide. (See *Sanders v. Simcich* (1884) 65 Cal. 50, 52 [2 P. 741]; *Rundell v. McDonald* (1919) 41 Cal.App. 175, 181-183 [182 P. 450]; cf. *Estate of Meyer* (1919) 44 Cal.App. 289 [186 P. 393] [statutory revocation as to surviving issue; see now Prob. Code, § 71].) Under the relevant provisions of the statute, unless the spouse is so provided for or in such way mentioned therein as to show an intention not to make such provision, the statutory presumption of revocation prevails. (See *Estate of Duke, supra*, 41 Cal.2d 509, 512; *Corker v. Corker* (1891) 87 Cal. 643, 648 [25 P. 922].) The crucial inquiry is whether the language of the will expressed an intention to specifically disinherit the surviving spouse. In construing testamentary intention, we must consider the language used by the testator in effecting the testamentary objective (see *Estate of Russell* (1968) 69 Cal.2d 200, 205 [70 Cal. Rptr. 561, 444 P.2d 353]), as of the date of the execution of the will. (*Estate of Turney* (1951) 101 Cal.App.2d 720, 726 [226 P.2d 80]; *Estate of Carter* (1942) 49 Cal.App.2d 251, 254 [121 P.2d 540].)

In the leading case of *Estate of Axcelrod, supra*, 23 Cal.2d 761, the court upheld the surviving husband's claim of revocation against a challenge of disinheritance based upon the following testamentary language: "'I have intentionally omitted all of my heirs who are not specifically mentioned herein, intending thereby to disinherit them, and if any such persons, or heirs, ... seek to establish or assert any claims to my estate or any part thereof, excepting under this Will, ... I hereby give and bequeath to such person or persons the sum of ONE ($1.00) DOLLAR ....'" (*Id.*, at p. 763.) The court reasoned that under such language

---

[2]The subject statute provides as follows: "If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received." No contention is made that respondent was provided for either by marriage contract or the will.

the testator contemplated only persons who at the time of the execution of the will stood in such relationship to the decedent that they would then conceptually fall within the designated disinherited class. Such language, it concluded, did not contemplate future heirs inasmuch as the person who at the time the testator executed her will was "a stranger, both in consanguinity and affinity, and whose subsequent relationship was yet to be projected, could scarcely have been considered by the testatrix as an 'heir,' much less a surviving husband." (*Estate of Axcelrod, supra,* at p. 767.) The rationale of *Axcelrod* has been consistently followed in subsequent decisions requiring a clearly manifested testamentary intention to disinherit the after-married surviving spouse. (See, e.g., *Estate of Poisl* (1955) 44 Cal.2d 147 [280 P.2d 789]; *Estate of Paul* (1972) 29 Cal.App.3d 690 [105 Cal.Rptr. 742].)

■ Unlike the facts in *Estate of Duke, supra,* 41 Cal.2d 509, 511 (rejecting a claim of revocation where the testamentary provisions intentionally omitted "any person or persons who may, after the date of this will, become my heir or heirs by reason of marriage or otherwise"), neither of the testamentary clauses herein disclose an explicit intention to omit provision for respondent either as a member of a designated disinherited class or as a contemplated spouse. (See *Estate of Rozen-Goldenberg* (1934) 1 Cal.App.2d 631, 633 [37 P.2d 132].) Nor are other authorities upon which appellant relies factually analogous: In *Estate of Lapidus* (1954) 123 Cal.App.2d 289 [266 P.2d 803], this court determined that the testator had expressly mentioned and specifically failed to provide for his contemplated spouse; in *Estate of Bridler* (1958) 165 Cal.App.2d 486 [331 P.2d 1028], a claim of statutory revocation was similarly rejected where the testatrix had expressly provided (specific bequests) for her contemplated spouse. Herein, no intention is manifested in any manner to disinherit respondent as a future spouse or heir. Thus, we conclude that the statutory presumption of revocation must prevail entitling respondent to take under the laws of intestacy as determined below.

Judgment affirmed.

Elkington, J., and Grodin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 12, 1981.