[Civ. No. 26550. Fourth Dist., Div. Three. July 22, 1983.]

Estate of BONNIE I. MURRAY, Deceased.
PAUL MURRAY, Petitioner and Respondent, v.
ROBERT HUGH BLACKNEY et al., Objectors and Appellants;
SECURITY PACIFIC NATIONAL BANK, as Executor, etc.,
Respondent.

COUNSEL

Bernard J. Lambert for Objectors and Appellants.

Roy O. Moss, Jr., for Petitioner and Respondent.

OPINION

**WALLIN, J.**—The probate court awarded Paul Murray one-third of his deceased wife's estate under the provisions of Probate Code section 70. The decedent's sons appeal.

### STATEMENT OF FACTS

Paul Murray and Bonnie I. Murray were married on August 29, 1972. Their marriage produced no children. By an earlier marriage Bonnie had three sons, Robert, Gary and Russell Blackney.

On July 31, 1978, Bonnie signed a petition to dissolve her marriage to Paul. On the same day, she executed her last will and testament naming her three sons as sole beneficiaries of her estate.[1] On October 23, 1979, the judgment of dissolution was entered.

---

[1] The pertinent paragraphs provide as follows:

"SECOND: I declare I am married to Paul Murray and there is no issue of this marriage. I declare I have three children the issue of a former marriage: Robert Hugh Blackney, Gary Douglas Blackney and David Russell Blackney.

"THIRD: Subject to the operation and effect of the conditions hereinafter noted:

"A. I hereby give, bequeath and devise all of my estate, over which I have testamentary ownership and disposition, at the time of my death, either real, personal, or mixed, of whatsoever kind or character and wheresoever situate, of which I may die possessed, or to which I may in any manner be entitled, or over which I may at the time of my death, have the power of appointment, to my said children, ROBERT HUGH BLACKNEY, GARY DOUGLAS BLACKNEY, and DAVID RUSSELL BLACKNEY, share and share alike, provided they survive me by 120 days.

"EIGHTH: Except as otherwise provided in this Will, I have intentionally and with full knowledge, omitted to provide for my heirs and I hereby generally and specifically disinherit each, any and all persons who shall contest or attack this Will or any portion of its provisions, and expressly revoke any share or interest heretofore given in this Will to such contestants, and I further declare that if any person other than mentioned in this Will shall establish himself or herself to be my heir, then I give and bequeath to such person the sum of ONE DOLLAR ($1.00)."

Bonnie and Paul lived separately for a short period. However, within a year of the dissolution, they reconciled their differences and remarried on September 3, 1980. Three days later Bonnie died of a brain tumor. Her will of July 31, 1978, was never revoked or changed.

On October 14, 1980, the will was admitted to probate. Paul promptly filed a petition to revoke, claiming the will executed before the remarriage failed to provide for him and was, therefore, revoked as to him under Probate Code section 70. He claimed one-third of Bonnie's estate under the laws of intestate succession. (Prob. Code, §§ 201 et seq., 221.) Relying principally on *Estate of Poisl* (1955) 44 Cal.2d 147 [280 P.2d 789], the trial court granted judgment for Paul.

DISCUSSION

■ Probate Code section 70 reflects a strong public policy against disinheritance of a surviving spouse, who is not provided for in the premarital will of the testator. (*Estate of Green* (1981) 120 Cal.App.3d 589, 592 [174 Cal.Rptr. 654].)

Section 70 states: "If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received." ■ In this case, there is no evidence of a marriage contract and the will contains no provision for Paul; the sole issue is the third exception's application.

■ The crucial inquiry in determining whether the spouse is mentioned is whether the language of the will expresses an intention to specifically disinherit the surviving spouse. (*Estate of Green, supra,* 120 Cal.App.3d 589, 592.) ■ Bonnie's will left her estate to her sons and stated: "Except as otherwise provided in this will, I have intentionally and with full knowledge, omitted to provide for my heirs and I hereby generally and specifically disinherit each."

General exclusionary clauses have been held insufficient to overcome statutory revocation. "[U]nder such language the testator contemplated only persons who *at the time of execution of the will* stood in such relationship to the decedent that they would *then* conceptually fall within the designated disinherited class." (*Estate of Green, supra,* 120 Cal.App.3d 589, 592-593 citing *Estate of Axcelrod* (1944) 23 Cal.2d 761, 767 [147 P.2d 1] (italics added.) We find this rule applicable to the present case.

The exclusionary clause in Bonnie's will did not intentionally omit a future heir who becomes so by marriage. (*Estate of Duke* (1953) 41 Cal.2d 509 [261 P.2d 235].) Thus, as in *Green,* there is no explicit intention to omit Paul as a member of a designated disinherited class.

Bonnie's sons next contend Paul is sufficiently mentioned in the will in paragraph SECOND to show her intent not to provide for him. The Supreme Court in *Estate of Poisl, supra,* 44 Cal.2d 147, noted that a will must show a contemplation of a future marriage whether providing for or disinheriting an after-acquired spouse. (See also *Estate of Paul* (1972) 29 Cal.App.3d 690, 695 [105 Cal.Rptr. 742].) Thus, merely *naming* Paul with no indication he might become a future spouse is not enough to prevent revocation. "That indication must appear on the face of the will, and extrinsic evidence is not admissible to show the testator's intention, at least unless there is some ambiguity." (*Estate of Poisl, supra,* 44 Cal.2d 147, 150.) Bonnie's mention of Paul in the clause denoting her issue and marital status is not ambiguous with regard to any indication of whether Paul is a prospective spouse. "[I]t is merely 'noncommittal' as were the words 'heirs at law' in the Duke case." (*Ibid.*)

*Estate of Paul, supra,* 29 Cal.App.3d 690, concerned a will naming P. as testator's wife and leaving one-half his estate to his son and daughter by a previous marriage. P. was not then his wife though they married a mere seven days later. In revoking the will under the third exception to section 70, the court stated: "To be applicable, i.e. to prevent revocation as to the spouse, the spouse must not only be mentioned in the will, but the 'mentioning' must be with a specific intent, the intention not to provide for her. It is clear that the first of these elements is present—the spouse was 'mentioned.' Our decision therefore must rest on the question of the testator's intent, the second element; it must be ascertained from the will itself." (*Id.,* at p. 695.)

The will in *Paul* was ordered revoked even though P. was mentioned as a wife and there was a reasonable inference the will was executed in contemplation of marriage. Further, she was named elsewhere as an alternate executor which the court also found insufficient to prevent revocation.

Although we have not been cited, nor can we find, a California case dealing specifically with the fact situation before us, a distillation of the authorities provides: (1) a strong public policy underlying section 70 that looks with "disfavor toward a testator's failure to provide for a surviving spouse" (*Estate of Duke, supra,* 41 Cal.2d 509, 512); and, (2) revocation by marriage is a presumption which can be rebutted only by a *clear manifestation of intent on the face of the will* (*Estate of Paul, supra,* 29

Cal.App.3d 690, 696-697; *Estate of Poisl, supra,* 44 Cal.2d 147, 150; *Estate of Green, supra,* 120 Cal.App.3d 589, 593).

■ Bonnie, in executing her will on the same day she filed for dissolution, may well have intended not to provide for Paul, *as the situation then presented itself.* However, she did not specifically disinherit any future marriage partner. We find it difficult to believe that a future partner, other than Paul, could revoke the will as to himself, merely as an after-acquired spouse, yet that option is not available to Paul when he remarries the same spouse.

Remarriage to a former spouse may occur rarely. However, the purpose of the statute (to prevent unintentional disinheritance of a surviving spouse) should apply equally to wills executed prior to a remarriage.[2]

Probate Code section 70 legislates the natural assumption that a decedent does not intend to disinherit an after-acquired spouse. We perceive no reason for a different rule merely because the after-acquired is also a former spouse. Remarriage resumed a relationship interrupted by a brief period of unhappiness leading to dissolution of the first marriage. The pretermitted heir statute applies to all marriages unless one of its specific exceptions is fully satisfied.

The judgment is affirmed.

Trotter, P. J., and Sonenshine, J., concurred.

A petition for a rehearing was denied August 8, 1983, and appellants' petition for a hearing by the Supreme Court was denied September 14, 1983.

---

[2]A leading treatise states "[u]nder a statute which provides that marriage operates as a revocation, a will is revoked which is executed when testator is married, . . . if testator is divorced from his wife and subsequently he remarries her." (2 W. Bowe & D. Parker, Page on Wills (rev. ed. 1960) § 21.91 at p. 504.)