87 F.3d 1319
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Patricia Hurst HOLT, Plaintiff-Appellant,
v.
J.L. PRESCOTT CO., Defendant-Appellee.
 No. 94-56613.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 9, 1996.
Decided June 26, 1996.
 
 Before: REINHARDT, KOZINSKI, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff-appellant Patricia Hurst Holt sued defendant-appellee J.L. Prescott Co. in diversity, claiming that an agreement between her late husband and Prescott entitled her to certain commissions. Following a bench trial, the district court entered judgment for Prescott. Holt now appeals the judgment, raising evidentiary issues and challenging the district court's decision rejecting her theories of contract liability, which are founded on public policy and the law of third party beneficiaries. For the reasons discussed below, we affirm the district court's judgment.
 
 ANALYSIS
 
 3
 In February 1984, Holt's late husband, J.A. Keilly, entered into a ten-year agreement with Prescott under which Keilly was to represent Prescott as an independent sales consultant in exchange for certain account assignments and commissions. The relevant portion of the February 3 letter agreement between Keilly and Prescott provides:
 
 
 4
 If you should die during the term of this agreement, we will continue to pay the above defined commission to your wife, Shirley G. Keilly, until December 31, 1988 and subsequent to that date she will receive from us if living, a flat 2% on total sales until December 31, 1993.
 
 
 5
 In January 1987, Shirley Keilly died. J.A. Keilly married Holt in 1988, then died in 1992. In her complaint, Holt alleged that "the agreement anticipated and contemplated that in the event of J.A. Keilly's death payments to J.A. Keilly Associates would be reduced and made to his wife, Patricia Hurst Holt[.]" At issue on appeal is whether the February 1984 agreement entitles Holt to the commissions it describes.
 
 
 6
 California contract law requires that a contract be interpreted so as "to give effect to the mutual intention of the parties as it existed at the time of contracting[.]" Cal.Civ.Code § 1636 (West 1985). To ascertain the intention of the parties, we look first to the language of the contract, since California law provides that "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal.Civ.Code § 1638 (West 1985). Because this contract has been reduced to writing, we must ascertain the intention of the parties "from the writing alone, if possible." Cal.Civ.Code § 1639 (West 1985).
 
 
 7
 In this case, the agreement expressly names the late Shirley G. Keilly, J.A. Keilly's former wife, as a beneficiary of the contract in the event of J.A. Keilly's death. Based on the unambiguous language of the contract, we conclude first, that Shirley Keilly was to be the exclusive beneficiary of the contract in the event of J.A. Keilly's death, and second, that she was to receive the benefits accorded her only "if living." Nowhere in this contract is Patricia Hurst Holt mentioned; by its very terms, it accords nothing to Holt.[1]
 
 
 8
 Our conclusion that J.A. Keilly and Prescott's mutual intent was to benefit only Shirley Keilly is bolstered by events subsequent to the agreement. See Cal.Civ.Code § 1856 (West 1985) (contract terms "may be explained or supplemented by course of dealing[.]"). Following Shirley's January 1987 death, and J.A. Keilly's February 1988 marriage to Patricia Hurst Holt, J.A. Keilly endeavored to amend the agreement to benefit Patricia. On July 19, 1988, he wrote to Prescott, stating that "for purposes of our Agreement dated February 3, 1984, the designation of my wife shall refer to Patricia Holt-Keilly." Prescott unambiguously rejected this proposal in a letter dated December 1, 1988:
 
 
 9
 I am sorry to advise you that J.L. Prescott Company is unable to accept your unilateral designation that your "wife," as such term is used in the Agreement dated February 3, 1984, is now a reference to Patricia Holt-Keilly. The original Agreement expressly refers to your previous wife, Shirley G. Keilly, and only to her. In fact, it specifically allows her, but only her, a commission subsequent to December 31, 1988 if she is living.... Accordingly, I must respectfully advise you that J.L. Prescott Company does not accept your proposed amendment to the Agreement dated February 3, 1984."
 
 
 10
 Based on the express terms of the agreement, as well as Prescott's unequivocal rebuff of J.A. Keilly's attempt to amend the agreement to benefit Holt, we reject Holt's contention that "the agreement anticipated and contemplated" that she would become the beneficiary in the event of J.A. Keilly's death. We next consider the merits of Holt's other arguments on appeal.
 
 1. Appellant's evidentiary arguments
 
 11
 Holt raises two evidentiary issues on appeal: She contends that the district court erroneously allowed testimony containing hearsay, and challenges the district court's characterization of that testimonial evidence.
 
 
 12
 Holt first challenges the district court's admission of the testimony of Don Spellman, Prescott's former vice-president of sales, concerning pre-agreement negotiations he had with J.A. Keilly. She contends Spellman's testimony contained inadmissible hearsay.
 
 
 13
 The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Here, the district court allowed Spellman to testify that during the negotiations, J.A. Keilly asked that his wife, Shirley, be named a beneficiary of the agreement because she was an integral part of his business. The court admitted the statement because it was offered "only to show the effect upon the recipient[,]" Don Spellman. The statement was not hearsay because it was admitted not to prove the truth of the matter asserted (that Shirley Keilly was an integral part of J.A. Keilly's business) but as evidence of its effect on Spellman (he understood that J.A. Keilly sought to name Shirley Keilly as beneficiary). See United States v. Castro, 887 F.2d 988, 1000 (9th Cir.1989) (credit records admissible in bank fraud prosecution where records were introduced not to prove the truth of their contents but to show what information was available to defendant loan officer when he approved loans in furtherance of bank fraud). The district court's admission of the statement for this purpose was entirely proper.
 
 
 14
 Holt next asserts that Spellman's testimony on cross-examination reveals he understood J.A. Keilly's intent as "the protection of his spouse," generally, and not the protection of Shirley Keilly in particular. This assertion is unfounded. Although Spellman did utter the phrase, "protection of a spouse," he did so in the context of describing industry custom generally. In testifying about his negotiations with J.A. Keilly, Spellman was consistent: his understanding was that J.A. Keilly intended to protect Shirley Keilly in particular.
 
 2. Appellant's public policy arguments
 
 15
 Holt next invokes public policy to support her claim. She contends it is the public policy of California and the federal government (1) "to perpetuate the marriage relation" and (2) to favor "arrangements [that] provide for a surviving spouse[,]" and urges that, in light of these policies, we read the relevant passage of the contract as "an attempt to provide for [J.A.] Keilly's 'wife[.]' " Holt's arguments from public policy are flawed in two important respects.
 
 
 16
 First, the authority Holt invokes in support of her public policy arguments is inapposite. The first case upon which she relies, Ottenberg v. Ottenberg, 194 F.Supp. 98 (D.D.C.1961), upheld a sealed agreement under which a son was to provide monthly payments to his aging parents in exchange for receipt of the parents' stock holdings upon their death. The Ottenberg court concluded that the written agreement, standing alone, was binding, see 194 F.Supp. at 102-05, and made only passing reference to the District of Columbia's public policy of seeking remuneration from the estates of parties on public assistance. Id. at 105 (citing Title 46, §§ 201 & 212, D.C.Code (1951)). Ottenberg 's reliance on the District of Columbia's remuneration ordinance has no application to this case.
 
 
 17
 Holt next invokes California public policy as described in In re Estate of Paul, 105 Cal.Rptr. 742 (Cal.Ct.App.1972). As Holt concedes, however, that case concerned the interpretation of a will and relied on the California Probate Code's provision favoring arrangements to support a surviving spouse. 105 Cal.Rptr. at 744-45 (discussing Cal.Prob.Code § 70). The presumptions of the California Probate Code similarly are not applicable to this case.
 
 
 18
 More importantly, however, we will not look to public policy concerns to override the express and unambiguous terms of a contract. To do so would be to thwart the clear intention of the parties, who aimed to benefit Shirley Keilly, and to contravene California contract law. See Cal.Civ.Code § 1636 (contract must be interpreted "to give effect to the mutual intention of the parties as it existed at the time of contracting[.]").
 
 
 19
 3. Appellant's third party beneficiary argument
 
 
 20
 Holt's final argument is that she should be treated as a third-party beneficiary of the agreement because she falls within a general class of beneficiaries--wives--she insists is covered by the agreement.
 
 
 21
 California contract law provides that where a contract is "made expressly for the benefit of a third person," that person is a third-party beneficiary of the contract and may enforce it "at any time before the parties thereto rescind it." Cal.Civ.Code. § 1559 (West 1985). This provision affords Holt no relief; as we concluded above, the agreement between J.A. Keilly and Prescott was made for the express benefit of Shirley Keilly.
 
 
 22
 Holt next invokes California case law recognizing that "a third party may enforce a contract where he shows that he is a member of a class of persons for whose benefit [the contract] was made." Garratt v. Baker, 56 P.2d 225, 226 (Cal.1936). This principle has no application here, however, since the agreement identifies not a class but a particular individual: "[J.A. Keilly's] wife, Shirley G. Keilly."
 
 CONCLUSION
 
 23
 For the reasons discussed above, we AFFIRM the district court's judgment for defendant-appellee J.L. Prescott Co.
 
 REINHARDT, Circuit Judge, concurring:
 
 24
 I concur, but not for the reason given by the majority. I do not agree that the language of the agreement is unambiguous. In fact, it is far from that. Were the evidence slightly different, Holt could well have prevailed under the agreement. I concur only because I believe that, while the outcome is close, I cannot conclude that the district court, which did a very careful job, clearly erred in reaching its determination.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The district court concluded that the contract was ambiguous because it concluded that in denoting "your wife, Shirley G. Keilly[,]" the contract "identified both [Keilly's] wife and Shirley Keilly." It nonetheless entered judgment for Prescott because it concluded that this ambiguity should be resolved against J.A. Keilly, drafter of the provision. We disagree with the district court's reasoning, though not its result, because we find the language of the contract unambiguously identifies Shirley Keilly as its sole beneficiary in the event of J.A. Keilly's death